324 So.2d 16 (1975)
AMERICAN NATIONAL BANK OF CHEYENNE, WYOMING, Plaintiff-Appellee,
v.
Denny E. GAMBLE et ux., Defendants-Appellants.
No. 12756.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
*17 Pugh & Nelson by Sydney B. Nelson, Shreveport, for defendants-appellants.
Milton C. Trichel, Jr., Shreveport, for plaintiff-appellee.
Before PRICE, MARVIN and GLADNEY, JJ.
PRICE, Judge.
American National Bank of Cheyenne, Wyoming, as assignee of Century Life Insurance Company, brought this action against Dr. Denny E. Gamble, and his wife, Kathryn C. Gamble, seeking to recover the accelerated balance owed on a promissory note and for recognition of its right to a first lien and privilege on certain properties mortgaged to secure the note. By supplemental pleadings plaintiff also joined as defendant, Denny Gamble Homes, Inc., alleging this defendant acquired the mortgaged properties under an agreement wherein it assumed the indebtedness and thereby became liable in solido with the original makers of the note.
Plaintiff asks for judgment for the alleged balance owed of $48,490.11, together with eight per cent interest from July 9, 1970, and ten per cent attorney fees.
Defendants answered denying the note was in default as they contend there have been payments made and other sums received and unaccounted for by plaintiff's assignor, Century, that when properly considered, render the note in a current condition. The trial court found for plaintiff and defendants have appealed.
This suit arises from the complicated financial activities of the defendants. On July 20, 1964, defendants, Denny and Kathryn Gamble, executed the promissory note in the principal amount of $65,000, payable to the order of Century Life Insurance Company. No payments on the principal were due until July 20, 1977, at which time the full amount of $65,000 *18 would mature. However, interest on the principal was payable in monthly installments as it accrued.
The note was secured by a mortgage on four pieces of property at that time owned by the Gambles. As additional security, the Gambles assigned their interest in certain "whole life" insurance policies to Century. The policies were "keyman" insurance policies owned by Denny Gamble Homes, Inc. and insured the lives of Dr. and Mrs. Gamble. The defendants believed that the premiums paid on the insurance policies would be tax deductible by the corporation and that Dr. and Mrs. Gamble could claim personal tax deductions for the monthly interest payments on the $65,000 loan. It was intended that when the $65,000 promissory note matured in 1977, the cash value of the insurance policies would be more than enough to satisfy the entire indebtedness of $65,000.
The Internal Revenue Service disagreed with defendants' interpretation of the tax laws regarding the deductibility of the insurance premiums. This fact caused Century and the Gambles to amend the note and mortgage in December of 1964, to provide for amortized payments on the promissory note and to release the insurance policies as security for the note.
Plaintiff purchased the note in question from Century on December 9, 1968, under a "warehousing" agreement. This contract obligated Century to repurchase the note within six months. However, when Century was placed in permanent receivership on October 1, 1969, it defaulted on its obligation to repurchase.
Defendants' last payment on the note was in July of 1970. In December of 1970, plaintiff filed this suit to collect the balance alleged to be owned on the note.
The suit went to trial in May of 1972. Plaintiff offered the testimony of a former vice-president, T. A. Ernest, who testified as to the correctness of the balance owed by defendants according to the records of American National Bank. Defendants presented the testimony of Dr. Gamble and certain exhibits on which they rely to establish payments allegedly made for which no credit was received on the principal balance owed. Defendants' inadequate bookkeeping and Century's absence from the suit made the factual issues extremely difficult to analyze and resolve. During the course of trial, the court granted a continuance to permit defendants to engage a certified public accountant to make an analysis of the evidence introduced to present a more understandable evaluation of the complex factual issues involved.
When trial resumed in May of 1974, defendants' accountant, Edward B. Shaw, was called to testify. He presented two schedules prepared by him reflecting the payments made and balance due on the note as claimed by plaintiff on the one hand and by defendants on the other. Also reflected on the schedules are payments made to and disbursements from an escrow account established in connection with the provisions of the mortgage to facilitate the payment of taxes and insurance premiums relating to the properties covered by the mortgage. He made no effort to determine the authenticity of any payment claimed and restricted his function to correlating the documentary and other evidence presented by either side to reflect their respective positions in a more understandable manner.
The schedule projecting plaintiff's evidence showed a balance due on the note of $48,537.48, while the other schedule reflecting the credits claimed by defendants showed a balance due of $37,597.57. During the period of the continuance, certain property subject to the mortgage was sold by agreement of the parties for a total price of $39,500, and this sum was applied on the note. Defendants contend this amount satisfied any liability they might have had on the note, while plaintiff maintains there is a remaining balance owed after the credit of the sum.
*19 The trial judge rendered judgment in favor of plaintiff in the amount of $22,840.99 plus eight per cent per annum interest thereon from September 6, 1972, ten per cent attorney fees on such interest and cast defendants with all costs of the suit. The judgment also recognized plaintiff's mortgage on the two remaining pieces of property and ordered their sale to satisfy the judgment. The trial judge gave no reasons for his judgment.
On this appeal defendants assign two specifications of error:
1. That the trial court based its judgment on a finding that plaintiff was a holder in due course of defendants' promissory note; and
2. The trial court erred in failing to give defendants credit for advance payments they made to Century on the note sued upon by plaintiff.
We find that defendants' first specification of error lacks merit as the record shows plaintiff conceded at the time of trial it was not a holder in due course and the case was not tried under this theory. For this reason we must assume the trial judge would not have accorded plaintiff this status in arriving at his decision.
The second and principal issue made by appellants concerns the failure of the trial judge to find defendants were entitled to the various credits claimed for monies allegedly received by Century and not applied against the subject loan.
Louisiana Code of Civil Procedure Article 1005 provides that the extinguishment of an obligation is an affirmative defense.
Louisiana Civil Code Article 2232 is pertinent to establishing the burden of proof on defendants in this situation. It provides as follows:
He who claims the execution of an obligation must prove it.
On the other hand, he who contends that he is exonerated, must prove the payment or the fact which has produced the extinction of the obligation. (Emphasis supplied)
Thus the burden to prove discharge of the obligation by payment rests squarely on defendants in this case. Our review is limited primarily to a factual review of the sufficiency of the proof offered by defendants seeking to show payment.
Defendants have not specified precisely in what manner the trial court erred. Rather, they choose to rely on the accountant's schedule reflecting defendants" documentary evidence to show they have no liability on the note. Since the two schedules prepared by the accountant are in agreement on the vast majority of items, we will consider only the instances wherein they differ.
The discrepancies between the schedules fall into three types of transactions:
1. Certain monthly payments in the amounts provided by the mortgage note which are alleged to have been paid by bank drafts drawn by Century on the account of Dr. and Mrs. Gamble for which no corresponding credit appears in records;
2. Disbursements from the escrow account which should have been credited on the principal balance of the mortgage which did not appear on the records of plaintiff;
3. Certain policy loan and cash surrender values of the life insurance policies issued on the lives of the Gambles concurrent with the initiation of the subject loan.
In support of their claim that monthly payments were paid by bank draft for which no credit was received, defendants introduced a number of drafts for the period in question.
*20 Two of the drafts submitted are not supported by proof they were paid when presented to the payee bank for acceptance. These exhibits are photo copies of the face of the draft and contain no markings by the bank to show payment. The records show there were occasions when defendants did not punctually accept for payment drafts forwarded by century for the monthly installments. Instead, defendant, Gamble, subsequently forwarded his personal check to cover the dishonored drafts. Under the circumstances shown, we do not find defendants have proven by a preponderance of the evidence that the disputed drafts were honored and the proceeds received by Century who failed to credit them to defendants' account.
There are two instances where transfers from escrow funds are shown as credits against the principal balance on the schedule of defendants' evidence as prepared by Shaw. Defendants contend that on the schedule prepared to show plaintiff's position, they have not been given proper credit for these items. The first instance shown is a withdrawal on June 29, 1965, of the sum of $1,460.42 which defendants seek to show was not applied by Century to payment on the mortgage loan under consideration, but was transferred to a suspense account. No explanation has been attempted in the evidence to elicit the meaning of the suspense account. Defendants sought to establish proof of such a transfer by production of a typewritten schedule styled "payment analysis July 1964 through December 1966" which contains a purported listing of escrow balances and amounts paid out in addition to balances on principal and interest. This instrument reflects a "paid out" item of $1,460.42 on June 29, 1965, with the word "suspense" appearing in explanation of the entry.
Dr. Gamble testified he was furnished this document by Century pursuant to his request for a statement of a balance owed. Although he did not specify on what date he received the document, it must be presumed to have been shortly after December 31, 1966, as that is the end of the period covered by the schedule. Apparently Dr. Gamble understood the purpose of the entry at the time as there is no evidence to show that he made any issue of the entry with Century after receipt of the schedule showing this withdrawal with no corresponding principal reduction to accord with it. The record reflects that it was not until more than four years later, after the note was in the possession of plaintiff, that he raised any question in regard to being entitled to a credit on the mortgage balance in this amount.
The document relied on by defendants is not signed by Century, neither does its name appear typed or printed thereon, nor does it contain any identification as to loan number. The record shows the defendants had at least twenty-three mortgage loans with Century at this approximate time.
Under these circumstances, we do not find defendants have offered sufficient proof that the principal balance should be reduced by the sum of $1,460.42.
The other instance complained of by defendants concerning a discrepancy relating to an escrow transfer, was on September 1, 1966, when a withdrawal of $1,097.20 was made from escrow and applied on the principal and interest of the note. Defendants contend this full amount should have been credited to reduction of principal only.
In accord with our conclusion that defendants failed to prove two of the monthly installment payment drafts were paid properly when due, there is a strong presumption the transfer from escrow for September 1, 1966, was made to bring current the monthly installment accruals on interest and principal.
The remaining area of dispute concerns whether defendants have proven entitlement to credits for amounts claimed to have been received by the mortgagee resulting *21 from loans on insurance policies orginally assigned as additional security in connection with the subject mortgage loan.
Defendant introduced several copies of loan applications to support his allegations. There are notations written in longhand on copies of the applications for loans that the proceeds should be credited to loan number 1863, which is the designation assigned the subject loan by Century.
The officer of plaintiff bank testified these amounts were not received by it nor were they shown as having been applied on this loan by Century on the schedule of payments transmitted at the time the loan was assigned to plaintiff.
The copies of the applications of course do not necessarily prove the loans were consummated. It is also shown in the record that defendants had some twenty-three other loans with Century at the time, some of which were in default. The insurance policies had been released as additional security connected with this loan at the time of the amendment to the note in December 1964, and were subsequently assigned to Century to secure other loans due it by defendants.
The evidence preponderates against any conclusion that if any policy loans were made by defendants as alleged that credit for such amounts should have been applied on the principal of the subject note. Defendants have failed to sustain their burden of proof in this regard.
We find no discernible error in the calculation of the balance owed as reflected in the judgment rendered after crediting the sum received for the properties sold during the course of this litigation, and for the reasons given the judgment is affirmed.
Costs of this appeal are assessed to appellant.