463 So.2d 951 (1985)
Michael RIDER, et al., Plaintiffs-Appellants,
v.
Susan Rider FONTENOT, et al., Defendants-Appellees.
No. 84-48.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1985.
*952 Clyde Fontenot, Ville Platte, for plaintiffs-appellants.
J. Jake Fontenot and Thomas F. Fuselier, Mamou, for defendants-appellees.
Before GUIDRY, FORET and LABORDE, JJ.
*953 LABORDE, Judge.
This is an appeal from a summary judgment dismissing plaintiffs' suit. We reverse and remand.
Plaintiffs-appellants Michael Rider and Ron Rider are the sons of Clarence Rider and his wife, Viola Rider. Defendant-appellee Susan Rider Fontenot is the daughter of Clarence and Viola Rider, and she is also the wife of defendant-appellee Steven Fontenot. Clarence Rider died intestate in January of 1980, but all of the other above-named persons are still alive.
On October 31, 1977, Clarence and Viola Rider purported to sell their homestead, consisting of a house and about two acres of land, to their daughter Susan, as Susan's separate property, with her husband Steven Fontenot concurring in that status. Mr. and Mrs. Rider reserved the usufruct and habitation of the property for their lives, together and individually. The act of sale further provides:
"This sale made and accepted for and in consideration of the price and sum of SIXTEEN THOUSAND FIVE HUNDRED AND NO/100 ($16,500.00) DOLLARS, which has been advanced over the past several years for medical expenses, repairs on the home, necessary appliances and furniture and to expend the sum of $2,500.00 to renovate the home after the passage of this sale.
It is further understood that none of the above consideration will be paid in cash to sellers.
Contracting parties dispense me, Notary, from the production of the Certificate of Mortgage required by law.
THUS DONE AND PASSED at Ville Platte, Louisiana, on the day, month and year aforesaid in the presence of the undersigned, competent witnesses, who have signed with the appearers and me, Notary, after reading the whole.
WITNESSES:
__________________ [signed..with.his. mark]____________________
 Clarence Rider
__________________ [signed]_____________________________
 Viola G. Rider
 [signed]______________________________
 Susan Rider Fontenot
 [signed]_______________________________
 Steven Francis Fontenot
 __________________________
 NOTARY PUBLIC"
As shown above, the act of sale was accomplished without any cash changing hands. The act was neither witnessed, notarized, nor recorded.
Subsequent to this purported sale, Mr. and Mrs. Rider continued to reside on the property, and apparently no one apart from the contracting parties was aware of the transaction. All litigants in this case agree that Mr. and Mrs. Rider had some misgivings about transferring the property, and therefore decided that, at the least, the sale act should not be notarized and recorded. Clarence Rider doubted the legality of the transaction, and he and Mrs. Rider were also concerned that the sale of the property could result in a termination of certain government benefits they were receiving.
Defendants continued to entreat Clarence and Viola Rider for a transfer to them of title to the Rider homestead and, on April 16, 1979, another act of sale was signed by the parties. This act purported to transfer title to the property to Steven *954 and Susan Rider Fontenot, with Mr. and Mrs. Rider again reserving the habitation and usufruct of the property for their lives, together and individually. The act of sale further provides:
"This sale made and accepted for and in consideration of STEVEN FONTENOT clearing the mortgage indebtedness on said property which mortgage note was due Leslie Ardoin and was many years past due and the said STEVEN FONTENOT having paid said mortgage indebtedness which totaled $2,810.02, the receipt whereof is hereby acknowledged, and full acquittance and discharge granted therefor. Contracting parties dispense me, notary, from the production of the Certificate of Mortgage required by law.
DONE AND PASSED at Ville Platte, Evangeline Parish, Louisiana on the day, month and year aforesaid in the presence of two undersigned and competent witnesses, who have signed with the appearers, and me, Notary, after reading the whole.
Witnesses:
[signed by Frieda B Fontenot]_____________ [signed]____________________
 CLARENCE RIDER
[signed by Debra L Guillory]______________ [signed]____________________
 VIOLA G. RIDER
 [signed by Susan R Fontenot]____
 STEVEN F. FONTENOT as per SRF
 __[signed by Jack Fruge]__
 NOTARY PUBLIC"
The mortgage indebtedness referred to in the act of sale was a debt owed by plaintiff Michael Rider to Leslie Ardoin, which was secured by a mortgage on the property of his parents. After the 1979 act of sale, Michael Rider was told that the debt to Ardoin was extinguished, but that he now owed the money to Steven and Susan Rider Fontenot. He then paid the $2,810.02 to Steven Fontenot, but neither he nor plaintiff Ron Rider were actually aware at that time that an attempt to transfer title to the Rider homestead to Steven and Susan Rider Fontenot was involved in the disappearance of the debt. Plaintiffs claim that Steven and Susan Rider Fontenot coerced Clarence and Viola Rider into transferring the property by telling the Riders that Ardoin would foreclose on the mortgage on their property if the debt was not paid immediately. Plaintiffs explain that the elderly, relatively impoverished Riders then decided that they would be better off if they agreed to give title to the property to the Fontenots in exchange for extinguishment of the mortgage.
The 1979 act of sale was recorded, and discovered by plaintiffs. It is this transaction that plaintiffs attacked in the petition that started this lawsuit. Plaintiffs averred that the mortgage indebtedness referred to in the act of sale was a debt owed by plaintiff Michael Rider to Leslie Ardoin, which was secured by a mortgage on the property of his parents. Plaintiffs further stated that Leslie Ardoin had agreed to allow Michael Rider to pay the debt "whenever he could," and that Ardoin had told defendants that "he was in no rush to collect the debt." Deposition testimony of Ardoin substantiates these averments, and makes clear that Ardoin had no intention of foreclosing the mortgage on the Rider homestead.
In their petition, plaintiffs claimed that the 1979 sale should be rescinded because of defendants' fraud, rescinded because of lack of consideration, or rescinded because *955 of lesion beyond moiety. Alternatively, plaintiffs claimed that the 1979 sale was a simulation, a disguised donation, or an advantage to a forced heir.
The petition was filed in July of 1982. Subsequently, the litigants deposed potential witnesses, and prepared for trial. After several attempts to defeat or delay trial by exceptions, defendants filed a motion for summary judgment on November 3, 1983, shortly before a scheduled trial on the merits. Defendants' motion raised, for the first time, the 1977 act of sale, which was appended to the motion. Until the motion was filed, plaintiffs were not aware of the 1977 act of sale.
While he was preparing for trial, defendants' attorney added the following to the body of the 1977 act:
"STATE OF LOUISIANA
PARISH OF EVANGELINE
 On this _____ day of ____________ 19__, before me, personally appeared: Viola
Guillory Rider, Susan Rider Fontenot and Steven Francis Fontenot, to me known to
be the persons who executed the foregoing instrument, and acknowledged that they
executed it as their free act and deed for the uses, purposes, and benefits therein
expressed.
[signed]__________________ [signed]____________________
Paula Courville VIOLA GUILLORY RIDER
[signed]___________________ [signed]_____________________
Vickie Hundley SUSAN RIDER FONTENOT
 [signed]_____________________
 STEVEN FRANCIS FONTENOT
 [signed]_______________
 J. JAKE FONTENOT
 NOTARY"
The act of sale was then recorded prior to the motion for summary judgment (but well after suit had been instituted). It should be noted that Clarence Rider, vendor in the act of sale, died before the institution of this suit and did not sign the acknowledgment.
Defendants' motion, in substance, contended that there was no valid sale of the property in 1979, because Clarence and Viola Rider had no title to the property to convey after the 1977 sale. Therefore, defendants argued, the suit against them should be dismissed.
Plaintiffs argued that introduction of the 1977 sale at such a late date was solely for the purpose of delaying the resolution of the ultimate issue: whether the property had, in fact, been transferred to defendants by a valid transaction. Further, plaintiffs argued, the 1977 act was never intended by the vendors to have any effect; therefore, it could not preempt a later sale.
The trial judge found that the 1977 act of sale transferred to defendants any title to the property that defendants might have, and that the 1979 act of sale was therefore a nullity. He entered summary judgment for defendants, dismissing plaintiffs' suit attacking the 1979 sale.
Plaintiffs have perfected this appeal.
We reverse the decision of the trial court. Defendants should not have been allowed to raise the prior act of sale in a motion for summary judgment, because the 1977 act of sale constitutes an affirmative defense to an action based on the 1979 act of sale, and therefore should have been raised in the answer to plaintiffs' petition. We do not rule on the validity of either act of sale; rather, we hold that the prior act *956 was improperly raised in an attempt to defeat litigation on the second act.
Louisiana Code of Civil Procedure article 1005 provides:
"The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation."
Although "prior acts of sale" is not an enumerated affirmative defense, clearly, it falls under "any other matter constituting an affirmative defense." See La.Code Civ. Proc. art 1005 comment (e). The prior act of sale operates as any other affirmative defense, because it serves to defeat plaintiffs' action not by a showing that the facts and questions of law raised by plaintiffs' petition will result in a judgment for defendants, but instead that matters wholly apart from the consideration of issues raised by plaintiffs' petition will result in a judgment for defendants. Thus, just as the enumerated affirmative defense of "discharge in bankruptcy" does not concern legal and factual questions raised by plaintiff's petition, but instead raises another legally sufficient ground to defeat an action, then so does the defense of transfer of title by a prior act, at least where that prior transfer is to the same person or persons sued as a result of the second purported transfer of title.
The policy behind the requirement that affirmative defenses be raised in answer is sensible and laudable. Because affirmative defenses raise matters for judicial resolution outside of issues raised by plaintiff's petition, plaintiff must be made aware of these matters at an early stage so that plaintiff can prepare an opposition to the defense and adjust his case, if necessary, in light of the new facts and issues raised by the affirmative defense. If the affirmative defense is allowed despite the defense not being raised in answer, the result is a surprise "trial by ambush" that unfairly aids the defendant, who knew about the defense even though plaintiff was kept in ignorance of the defense.
In this case, if defendants had properly raised their affirmative defense in answer, the plaintiffs could have (and undoubtedly would have) amended their petition to attack both purported transfers of title. Plaintiffs could have adequately prepared their legal and factual arguments as to the efficacy of both transactions. Raising the affirmative defense in answer not only would have been fair to the plaintiff, it also would have simplified for the trial court what has now become a complex and unusual dispute. Further, it would have prevented the possibility that plaintiff might have to challenge the 1977 and 1979 acts of sale in separate judicial proceedings, which would have been advantageous to the litigants and the heavily burdened court system of this state.
Clearly, defendants could not legally raise the 1977 act of sale for the first time in a motion for summary judgment. A motion for summary judgment turns on the applicable law as applied to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." La.Code Civ. Proc. art. 966. Put simply, the motion rests upon the record, with affidavits, if necessary, to attest to the truth of facts already alleged in the pleadings of one or more of the litigants. If the established facts show that there is no genuine, material factual issue, and if the mover is entitled to judgment based on the law as applied to these established facts, then the case may be summarily adjudicated. In this case, the 1977 act is open to factual question, and it clearly was neither a part of the record nor alleged in the pleadings of either *957 party. Therefore, the trial judge should not have granted summary judgment based on the legal effect (if any) of the 1977 act of sale.
This court has broad discretionary power to "render any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.Proc. art. 2164. We hold, in this instance, that justice will best be served by a remand to the trial court. For a proper resolution of this dispute, the trial court should have both the 1977 and 1979 acts before it in one trial proceeding. Upon remand, defendants may amend their answer to include the 1977 act and plaintiffs may amend their petition to attack all purported transfers of the Rider homestead to defendants. We note that defendants, in effect, admitted the invalidity of the 1979 act in their motion for summary judgment. We have considered whether defendants should now be estopped from asserting title to the Rider homestead under the 1979 act because of their allegations in their motion for summary judgment, and we have decided that the paucity of facts in the record would not substantiate a decision by this court to that effect. Therefore, on remand, defendants may still assert title under the 1979 act. On remand, any affirmative defenses not raised by the defendants' amended answer will be waived. We note that plaintiffs may attack, by parol evidence if necessary, all purported conveyances of the Rider homestead to defendants. See, e.g., La.Civ.Code art. 2239. Because of the broad rights that the Civil Code gives forced heirs in cases of this nature, and based on our review of the record in this case, we seriously question whether this case could be decided by a summary judgment in any event.
Based on the above reasons, the judgment of the trial court is reversed and remanded for proceedings consistent with the opinion rendered by this court. All costs are assessed to defendants-appellees Steven and Susan Rider Fontenot.
REVERSED AND REMANDED.
FORET and GUIDRY, JJ., concur in the result.