685 So.2d 473 (1996)
Tracey PATTERSON, Plaintiff-Appellee and Appellant,
v.
STATE of Louisiana, et al., Defendants-Appellants and Appellees.
No. 95-1668.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
Writ Denied February 21, 1997.
*474 James Clifford Dixon, Baton Rouge, for Tracey Patterson.
Roxie R. Foster, Tim Anthony Tullos, Edward M. Campbell, Assistant Attorney General, John G. Sheppard Jr., Baton Rouge, for State of Louisiana.
Donald J. Anzelmo, Monroe, David Michael Kaufman, Lafayette, for Douglas M. Rigler.
John J. Hainkel Jr., New Orleans, for Swanner & Associates.
Timothy John McNamara, Lafayette, for General Motors Corporation.
Joseph Shelby Cage Jr., Shreveport, Thomas B. Thompson, Lafayette, for U.S.A. on Behalf of the Veterans Administration.
Before YELVERTON, KNOLL, and COOKS, JJ.
KNOLL, Judge.
On August 19, 1982, plaintiffs, Douglas Rigler and Tracey Patterson, were injured in a one-vehicle accident that occurred on Highway 167 between Lafayette and Maurice. Plaintiffs assert that the accident was caused by a defective condition in the roadway, namely a three to four inch drop-off between the traveled portion of the highway and the shoulder. Plaintiffs also assert that instability of the shoulder was a contributing cause of the accident. Defendant, State of Louisiana through the Department of Transportation and Development (DOTD), denied the existence of any roadway defect and contended that the accident was caused solely through the fault of the driver of the vehicle, Mr. Rigler. After a trial on the merits, the trial court found that the plaintiffs failed to carry their burden of proof with respect to a defect in the roadway and dismissed plaintiffs' *475 claims. Plaintiffs appealed, each assigning five assignments of error. Finding no manifest error, we affirm.

FACTS
On the evening of August 18, 1982, Douglas Rigler drove a rented 1981 Oldsmobile Cutlass from Baton Rouge to the El Toredo restaurant in Lafayette. Tracey Patterson, Mr. Rigler's roommate, was a guest passenger in the vehicle. Mr. Rigler and Ms. Patterson had dinner at El Toredo, where they both consumed alcoholic beverages.
Mr. Rigler testified that he had one beer and a few sips of Ms. Patterson's margarita during their meal, which lasted around two hours. After dinner, at approximately 10:35 p.m., Mr. Rigler drove South on Highway 167 towards Abbeville. Mr. Rigler stated that it was raining and that the road was wet.
Mr. Rigler testified that a few miles from the restaurant, he encountered a mediumsized dog in the roadway. The dog was crossing the roadway from right to left and it paused in the center of the two-lane highway. Mr. Rigler testified that as he steered the vehicle to the right to avoid the dog, the right side of the car dropped off onto the shoulder. Mr. Rigler said that he heard a grinding sound, like metal on metal or metal on concrete. He testified that he knew something was "bad wrong" and he feared that the right side of the vehicle would come apart. Mr. Rigler stated he then pumped the brakes in an attempt to slow the vehicle, while trying to keep the vehicle straight. He testified that he then hit a bump, which bounced the vehicle back up onto the roadway, at which point he lost control of the vehicle. The vehicle then flipped over, ejecting Mr. Rigler through the glass of the driver's side window. Mr. Rigler landed on his back and neck, and he testified that he heard his neck snap. Mr. Rigler sustained a severe spinal injury that rendered him a quadriplegic.
Tracey Patterson's version of the accident paralleled Mr. Rigler's. She testified that during the two to three hours prior to the accident, she and Mr. Rigler had eaten dinner at the El Toredo restaurant, and that Mr. Rigler had consumed one or two beers and half of her margarita. She said that it was raining and that the road was wet. She testified that a few minutes after leaving the restaurant, Mr. Rigler swerved to the right and she saw a dog out of the corner of her eye. As one of the right tires left the road, she noticed a drop-off, and she then felt the tires rubbing against the road. She testified that the car then remounted the roadway, veered left, straightened out, and started flipping. Ms. Patterson sprained muscles in her back and neck, and had slivers of glass imbedded in her chin as a result of the accident. She further stated that three days after the accident, she returned to what she believed to be the accident scene and observed a three to four inch drop off between the traveled portion of the roadway and the shoulder at the point where the vehicle had remounted the roadway.
Sergeant Guy J. Barnett, a trooper with the Louisiana State Police, testified that he arrived at the scene at 10:59 p.m., shortly after the accident occurred. Trooper Barnett stated that he had been with the State Police for a year at the time of the accident, and that he had been Chief of Detectives with ten years of experience in the Lafayette Parish Sheriff's Office prior to joining the Louisiana State Police.
When Trooper Barnett arrived, he observed the Oldsmobile lying upside down in the median, and he began an investigation to determine the cause of the accident. Although he indicated that the roadway was dry at the time he arrived, Trooper Barnett noted that the median in which the vehicle was lying was damp. Trooper Barnett was able to determine the path of the Rigler vehicle by a one inch deep tire path in the shell and aggregate shoulder. In the report filed by Trooper Barnett he noted this indentation as a "rut." Nevertheless, at trial, he testified that he could have used a better descriptive word for the indentation, and that it would be better described as a "tire path" or "tire mark." Trooper Barnett stated that the indentation was only deep enough to break the surface of the shoulder and to enable him to determine the path of the vehicle. Although the accident form used by Trooper Barnett contained specific boxes for *476 noting roadway defects, he did not report any defects in the roadway.
Trooper Barnett testified that he paced off the tire marks he found on the right and left shoulders. He estimated that the Rigler vehicle traveled approximately 278 feet on the right shoulder before remounting the roadway. He then paced off approximately 87 feet across the roadway to where the Rigler vehicle encountered the left shoulder, and proceeded 95 feet down the left shoulder to a point where the Rigler vehicle struck a mailbox. He estimated that the vehicle traveled an additional 51 feet after striking the mailbox before it began to roll over. Trooper Barnett opined that the Rigler vehicle had traveled sideways through the median and that the soft dirt in the median had built up in front of the tires, causing the vehicle to roll over.
Trooper Barnett testified that the condition of the shoulder was in "tip-top" shape. He further stated that he was very familiar with the shoulder of that portion of Highway 167, and that he considered it an excellent place to pull over vehicles for traffic violations. Trooper Barnett stated that the width of the shoulder was at least eight feet, and that it was a safe place to approach a vehicle for the purpose of writing traffic tickets.
Trooper Barnett testified that he inventoried the contents of the Rigler vehicle before it was transported to the wrecker yard. He inventoried a red-orange one gallon Igloo cooler, and stated that it contained "screwdrivers," an alcoholic drink made with orange juice. Mr. Rigler and Ms. Patterson denied the existence of the cooler. Trooper Barnett testified he felt that the accident was alcohol related, and he went to the hospital to question Mr. Rigler and to obtain a blood sample. Trooper Barnett stated that Mr. Rigler smelled strongly of alcohol. A sample of Mr. Rigler's blood was tested by Our Lady of Lourdes Hospital and reflected a blood alcohol level of .125%. The same sample, when tested by the State Police Lab, reflected a blood alcohol level of .09%.
Trooper Barnett returned to the accident site a day or two later in order to retrieve a pistol that had been inside the Rigler vehicle. While he was there, Trooper Barnett reexamined the site in daylight to see if he had missed any clues as to the cause of the accident. He did not note any defects in the roadway and he made no changes to his report as a result of his re-examination of the accident site.
Plaintiffs called James Loumiet as an expert witness in the areas of accident reconstruction and highway safety. Mr. Loumiet opined that Mr. Rigler lost control of the vehicle because of a "slingshot reentry" caused by an excessive edge drop between the shoulder and the traveled portion of the road. Mr. Loumiet testified that the plaintiffs' description of the accident was consistent with a "classic scrubbing reentry," in which the vehicle remounts the roadway very quickly before going out control. Mr. Loumiet further testified that the notation of a "rut" in Trooper Barnett's report indicated that the shoulder was unstable. He opined that shoulder instability was a contributing cause of the accident.
The State pointed out inadequacies in the bases of Mr. Loumiet's opinions on crossexamination. Mr. Loumiet admitted that his opinion was based almost entirely upon the plaintiffs' version of the accident, and that he referred to Trooper Barnett's report only for a general description of the accident scene. Although he noted discrepancies between Trooper Barnett's report and the plaintiffs' version of the accident, Mr. Loumiet did not attempt to resolve them.
Mr. Loumiet stated that he did not attempt to reconstruct the accident because he did not have sufficient data to do so. He admitted that he did not consult construction plans or otherwise attempt to discover the dimensions of the roadway. He testified that he was unable to determine whether the roadway was wet or dry at the time of the accident, although he had obtained weather data that indicated no precipitation in either Lafayette or Abbeville on the date of the accident. Mr. Loumiet further admitted that although he reviewed maintenance records for Highway 167, he was unable to interpret the reports and did not attempt to seek clarification regarding them. The maintenance reports indicated that the shoulders of *477 Highway 167 south of Lafayette had been "bladed" by a motor patrol grader on August 18 and 19, 1982, the day prior to the accident and the day of the accident.
The trial court dismissed plaintiffs' claims against the State, finding that they failed to prove that a defect in Highway 167 caused the accident. The trial court summarized the testimonies of the witnesses and noted the discrepancies between the statements of the plaintiffs, and the report and testimony of Trooper Barnett. With regard to the existence of a defect in the shoulder, the court specifically found the testimony of the Trooper Barnett to be more credible than that of the plaintiffs. The court further found that the weather data and maintenance reports corroborated Trooper Barnett's testimony. The court found the testimony of Mr. Loumiet was unpersuasive, and that it was based upon insufficient data. The court concluded:
Having had the opportunity to observe the demeanor of the parties and after careful consideration of the entirety of the evidence, including the testimony of the plaintiffs which has been contradicted by Trooper Barnett as well as other evidence, the Court finds the testimony of Trooper Barnett as being the more credible and supported by the totality of the evidence and specifically finds the plaintiffs not credible. Accordingly, the Court finds plaintiffs have failed to meet their burden of proof. The court further specifically finds that there was no rut nor defective shoulder on Highway 167 at the location of the accident. For whatever reason, Rigler failed to maintain proper control, was inattentive and was negligent in his attempt to avoid a dog in his path. Plaintiffs have failed to prove any liability on the part of DOTD either under strict liability or negligence theories.
Mr. Rigler and Ms. Patterson appeal, asserting that the trial court committed manifest error in failing to find that the accident was caused by a defective condition in the roadway. They argue that the trial court erred in basing its ruling solely upon the testimony of a single witness, namely Trooper Barnett, and they argue that the trial court erroneously applied the doctrine falsius in uno, falsius in omnibus with regard to their own testimony. Mr. Rigler asserts that the trial court erred in allowing evidence of his fault to be presented, and that the trial court's determination that the accident was caused solely by his fault was manifest error.

EVIDENCE OF FAULT
Mr. Rigler consistently objected to the introduction of evidence of his comparative fault as an affirmative defense to his claim against DOTD. The trial court heard the evidence subject to the objection, and at the conclusion of trial issued a ruling accepting the evidence. Mr. Rigler asserts that DOTD never pled his fault as an affirmative defense to his claim for damages, and that therefore, the trial court erred in allowing evidence of Mr. Rigler's fault to be introduced at trial.
The record reflects that this lawsuit began on August 13, 1983, when Ms. Patterson filed suit against DOTD, Mr. Rigler, and Swanner and Associates, the owner of the vehicle. On September 23, 1983, DOTD filed an answer and third-party-demand in which it specifically alleged that the accident was caused through the fault of Mr. Rigler. Paragraph 13 of the third-party-demand filed by DOTD states:
The accident and alleged damages occurred through no fault or negligence on the part of the Department, but through the fault of the defendant, Douglas M. Rigler which consisted of the following non-exclusive acts:
a. In proceeding at an unsafe and unreasonable rate of speed;
b. In failing to maintain control of his vehicle;
c. Failing to see what he should have seen;
d. Failing to take adequate precaution for the protection of herself (sic);
e. Other acts of negligence which may be shown at the trial of this matter.
On February 1, 1984, Mr. Rigler filed an answer and reconventional demand in which he denied that he was at fault in causing the accident. He further alleged in his reconventional *478 demand that the sole cause of the accident was due to the fault of the DOTD. On July 30, 1984, DOTD filed a general denial to Mr. Rigler's reconventional demand. On August 29, 1985, DOTD filed a first supplemental and amending answer and third party demand, in which it re-averred its allegations that the accident was caused solely by the negligence of Mr. Rigler.
Mr. Rigler admits that DOTD pled his comparative fault with respect to Ms. Patterson's lawsuit. Nevertheless, he argues that since it filed only a general denial in response to his reconventional demand, it never pled the affirmative defense with respect to his reconventional demand. As a result, Mr. Rigler objected at trial that introduction of evidence of his negligence by DOTD would be an unlawful expansion of the pleadings.
La.Code Civ.P. art. 1005 provides that an answer shall set forth affirmatively any affirmative defenses. The policy behind this article is the prevention of "trial by ambush." As stated by this court in Rider v. Fontenot, 463 So.2d 951 (La.App. 3 Cir.1985):
The policy behind the requirement that affirmative defenses be raised in answer is sensible and laudible. Because affirmative defenses raise matters for judicial resolution outside of issues raised by plaintiff's petition, plaintiff must be made aware of these matters at an early stage so that plaintiff can prepare an opposition to the defense and adjust his case, if necessary, in light of the new facts and issues raised by the affirmative defense.
Rider, 463 So.2d at 956.
Under La.Code Civ.P. art. 5051, the articles of the Code of Civil Procedure are to be construed liberally, and with due regard to the fact that the rules of procedure implement the substantive laws and are not an end in themselves. Furthermore, La.Code Civ. P. art. 865 provides that every pleading shall be so construed as to do substantial justice. See Paxton v. Ballard, 289 So.2d 85 (La. 1974).
Mr. Rigler's argument overlooks that he was first a defendant with respect to the third-party-demand filed by DOTD. DOTD's third-party-demand as amended sufficiently informed Mr. Rigler of DOTD's contention that the accident was caused solely by his negligence. In Scott v. Behrman, 273 So.2d 661 (La.App. 4 Cir.1973), the court addressed a similar circumstance stating:
A plaintiff who has pleaded defendant's causative negligence in his petition has thereby, for purposes of "answer" to a reconventional demand based on the same incident, "set forth affirmatively * * * contributory negligence" as required by C.C.P. art. 1005 as made applicable by art. 1035.
Scott, 273 So.2d at 665.
We find that the issue of Mr. Rigler's comparative fault was squarely placed before the court in the very first pleading filed by the DOTD, ten years before trial on the merits. We do not find that Mr. Rigler was "ambushed" by DOTD's failure to reiterate its allegations in its answer to his reconventional demand, nor do we note any surprise or prejudice. Accordingly, we affirm the trial court's ruling allowing the introduction of evidence of Mr. Rigler's fault.

PROOF OF DEFECT
Plaintiffs asserted DOTD's liability under both negligence and strict liability theories. Under either theory, however, DOTD's duty is the same, namely to keep the highways and shoulders reasonably safe. Whether DOTD breached this duty, that is, whether the roadway at the accident scene was in an unreasonably dangerous condition, depends on the facts and circumstances of each case. Hunter v. Dept. of Transp. and Dev., 620 So.2d 1149 (La.1993). As a threshold issue for proving DOTD's liability, the plaintiffs must first prove that an unsafe condition existed in the roadway and that the condition was a cause in fact of the accident.
The trial court heard conflicting testimony on the existence of a roadway defect. Plaintiffs testified that they noted a drop off as the right tires of the vehicle left the roadway. Ms. Patterson stated that when she returned to what she believed to be the accident scene and she estimated a three to four inch edge drop where the vehicle had remounted the roadway. Trooper Barnett, *479 on the other hand, stated that the shoulder was in "tip top" shape, and that there were no defects such as an edge drop. DOTD maintenance reports indicated that the shoulders of Highway 167 were regularly maintained, and that they had been "bladed" by a motor patrol the day before and the day of the accident. The trial court carefully considered the evidence on this issue and determined that the testimony of Trooper Barnett was supported by the evidence as a whole and was more credible than that of the plaintiffs. Accordingly, the trial court determined that no roadway defect existed.
Plaintiffs contend that the trial court committed manifest error in its determination that no defect in the roadway existed and that the accident was caused solely by the fault of Mr. Rigler. Plaintiffs argue that the trial court based its findings of fact solely upon Trooper Barnett's testimony, and they assert that the trial court committed manifest error in applying the doctrine of falsius in uno, falsius in omnibus to their own testimony.
In the fountainhead case of Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court set out the principles for the appellate review of findings of fact:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

* * * * * *
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

* * * * * *
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell, 549 So.2d at 844-5. (Citations omitted).
In Stobart v. State through DOTD, 617 So.2d 880 (La.1993), the Supreme Court refined the manifest error standard into a two part test. To reverse the determinations of the factfinder, the appellate court must first find from a review of the entire record that a reasonable factual basis does not exist for the finding of the trial court. Second, the appellate court must determine that the record establishes that the trial court's finding is clearly wrong. Stobart, supra at 882. After a review of the record, we find that the first part of the test has not been satisfied, and that as a result we need not address the second part.
We have conscientiously reviewed the record in its entirety, and we conclude that there clearly exists a reasonable factual basis for the determination of the trial court. There was little, if any, objective evidence of a roadway defect. Maintenance records indicated that routine maintenance had been performed on the shoulders of Highway 167 immediately prior to the accident. The trial court was presented with two contradictory lines of testimony and circumstantial evidence concerning the existence of a defect in the roadway that forced a credibility determination. The trial court's findings, based upon its determinations of credibility were reasonable and supported by the record as a whole. Trooper Barnett surveyed the accident scene just after the accident occurred, and he reported that the shoulders were in "tip top" shape. Trooper Barnett's testimony *480 was internally consistent, plausible, and supported by much of the documentary evidence. We cannot say that the trial court committed manifest error in determining that Trooper Barnett was a credible witness and that there existed no defect in Highway 167 that caused plaintiffs' accident.
While it is true that the trial court did not find plaintiffs' testimony credible with respect to the existence of a defect in the roadway, there is no support in the record that the trial court applied the doctrine of falsius in uno, falsius in omnibus. The written reasons handed down by the trial court do not reflect that the trial court rejected the plaintiffs' entire testimony. To the contrary, the reasons merely reflect that where the plaintiffs' testimony conflicted with Trooper Barnett's testimony, the court made the credibility determination in favor of Trooper Barnett. The trial court, as finder of fact may accept or reject in whole or in part the testimony of any witness. Broussard v. Guilbeaux, 93-1353 (La.App. 3 Cir. 5/4/94); 640 So.2d 509.
We conclude that the findings of fact of the court below were not manifestly erroneous and were supported by the record as a whole. Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs, Douglas Rigler and Tracey Patterson.
AFFIRMED.