350 So.2d 1315 (1977)
RED BARN CHEMICALS, INC., Plaintiff-Appellant,
v.
R. O. LASSALLE, Jr., Defendant-Appellee.
No. 6160.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
LeBlanc & Boudreau by Albert L. Boudreau, Jr., Abbeville, for plaintiff-appellant.
Mestayer & Simon by Ray F. Mestayer, New Iberia, for defendant-appellee.
Before DOMENGEAUX, WATSON and FORET, JJ.
FORET, Judge.
Red Barn Chemicals, Inc. (hereinafter referred to as Red Barn) instituted suit in the amount of $4,672.01 for the non-payment of fertilizer allegedly purchased, against R. O. Lassalle, Jr. (hereinafter called Lassalle). From judgment in favor of defendant Lassalle, plaintiff Red Barn appeals. Appellant assigns the following as errors of the trial court:
1. Allowing the defendant to contest the correctness of plaintiff's account in the suit on open account where the defendant failed to object to the correctness of the account for twelve (12) months prior to the filing of suit;

*1316 2. Allowing the defendant, who did not object to the correctness of an account rendered to him until after suit thereon, to challenge the correctness of the account at the trial;
3. Finding that the plaintiff did not prove its case in a suit on open account where the plaintiff proved the sales of the merchandise and delivery of the merchandise to defendant;
4. Allowing the defendant in a suit on open account to testify that payments had been made for which he was not credited, where the defendant did not specifically plead payment in the answer, but only pleaded a general denial;
5. Allowing the defendant in a suit on open account to introduce evidence tending to show fraud or mistake where fraud or mistake was not specifically pleaded in the answer;
6. Denying plaintiff interest of twelve (12%) per cent per annum under Louisiana Consumer Credit Law.
We affirm.
In 1974, Lassalle was the owner of a farm, on 162 acres of which he planted sugar cane. For the financing of his sugar cane crop, as in the past, he dealt with Opelousas Production Credit Association (hereinafter called OPCA), which operated a branch office in New Iberia, Louisiana. For the crop year of 1974, a $5,200.00 budget figure for the purchase of fertilizer was established by OPCA and Lassalle.
At the time of institution of this suit, OPCA and Lassalle had done business for at least sixteen years. Each year OPCA financed Lassalle's various farming operations, and together they computed the monetary and quantitative amounts of fertilizer and chemicals needed. Those computations were made in light of the acreage to be planted and of the price and quantity of fertilizer and other chemicals to be used, as judged from the farming experiences of Lassalle and other farmers in the parish in the past years, as well as from consultations with those in the fertilizer and chemical businesses.
The figure of $5,200.00 was thought to be more than adequate to purchase the fertilizer for Lassalle's 1974 sugar cane crop. An amount within a $4,000.00 to $5,000.00 range had been used in the past years. The price of fertilizer had not substantially increased since 1973. In that year, the sum of $4,630.73 had sufficed for the purchase of fertilizer.
In 1974, Lassalle purchased his fertilizer from Red Barn. On or about May 15, 1974, after all fertilizing had terminated, Lassalle contacted Sexon Labit, Red Barn's manager in New Iberia. According to Lassalle, he requested that Labit supply him with a figure for the cost of all fertilizer purchased by him. Before he did so, Labit asked Lassalle to sign invoices for purchases purportedly made by Lassalle. Although he initially refused, Lassalle finally acquiesced therein. Thereafter, Labit announced a figure of $4,290.78. Lassalle then telephoned Carl Fortier, Manager of OPCA, furnished the sum of $4,290.78 as the total of the fertilizer bill, and requested that OPCA issue a check in that amount payable to Red Barn. A check in that amount was sent to Red Barn.
Labit's version of that May 15, 1974, meeting with Lassalle, in almost all respects, differs. According to Labit, Lassalle requested the amount of the bill. Whether it was the total bill or the monthly bill, Labit did not know. Labit stated that Lassalle did sign invoices at the meeting. However, Labit definitively said that he never gave Lassalle an amount as the balance of a total or monthly bill. Lassalle did telephone OPCA. Red Barn did receive a $4,290.78 check from OPCA. Of that amount, Labit alleged, Lassalle received $598 in cash; an allegation which Lassalle denies. The remainder was credited, at one time or another, to the bill of Lassalle. Labit further stated that Lassalle made no fertilizer purchases subsequent to May 15, 1974.
According to Red Barn's billing system, as attested to by Labit and Gail Maturin, a former Red Barn secretary, for each purchase, *1317 four invoices are executed. One is given to the customer, another is inserted in a customer file in the New Iberia office, and two are sent to the Red Barn Office in Tulsa, Oklahoma. Thus, at any time, by the simple view of a customer's file, his total bill could be ascertained.
The Tulsa Office mailed bills to Red Barn customers every month. All purchases before the twenty-fifth day of the preceding month were included in the following month's bill. The bill for purchases subsequent to the twenty-fifth day of the month were received by the customer in the second month following the purchase. Thus, on May 15, 1974, if Lassalle viewed his monthly bill received in May, rather than his personal file of invoices, his only additional balance to Red Barn would have been for purchases made after April 25.
According to the records of Red Barn, on April 24, Lassalle purchased five and one-half tons of fertilizer; on April 25, Lassalle purchased twenty-five tons of fertilizer. That was inconceivable to Carl Fortier, who stated that the amount of the bill "would just be about double his [Lassalle's] requirements"; to Homer Alleman, the former manager of Red Barn, who said that it was unreasonable to believe that Lassalle purchased so much fertilizer; and to the trial judge.

I

LASSALLE'S CONTESTING OF THE BILL
Plaintiff-appellant asserts that defendant Lassalle admitted the correctness of his account with Red Barn. As authority therefor, it cites the following rule of law: Normally, where an account is delivered to the debtor and the debtor makes no objection thereto within a reasonable time, the failure to object is considered as an admission of the correctness of the account. Where the debtor makes objection thereto, but only after the institution of suit thereon, the account is regarded as an account stated. Peterson Sales Co., Inc. v. C-Moore Glass, Inc., 296 So.2d 397 (La.App. 2 Cir. 1974), and cases cited therein.
However, the above law is not applicable to the case at bar. Plaintiff Red Barn did not produce evidence that defendant Lassalle received his monthly bills. Lassalle did admit that some monthly bills had been delivered to him, but he did not admit that he received bills every month. Lassalle did not concede the correctness of the bill allegedly owed by him. Rather, he denied the existence of an unpaid balance.
"Q. Did you at any time ever contest the amount that you owed Red Barn before this long before this suit was filed?
A. I was questioned once about it, and I told them I didn't think I owed them anything, that [I] had finished paying them May the 15th of 1974." (Tr., pg. 119)
For the foregoing reasons, we think that this argument of plaintiff-appellant is without merit.

II

PROOF OF PAYMENT
All affirmative defenses must be specially pleaded in the answer. Payment is one such defense. LSA-C.C.P. Art. 1005; American Nat. Bank of Cheyenne, Wyo. v. Gamble, 324 So.2d 16 (La.App. 2 Cir. 1975); Glass v. Mott, 295 So.2d 84 (La.App. 2 Cir. 1974). In the absence of inclusion of an affirmative defense in the answer, evidence can be adduced thereon only in the absence of an objection thereto. LSA-C.C.P. Art. 1154; Webster v. Rushing, La., 316 So.2d 111 (1975); Austrum v. City of Baton Rouge, La., 282 So.2d 434 (1973).
In this case, defendant Lassalle filed an answer of general denial to the allegations contained in the petition of plaintiff Red Barn. During trial, defense counsel elicited testimony from plaintiff's witnesses, as well as from his own, regarding credits as to the account and payment thereon. Plaintiff did not object thereto. In fact, as to one credit, plaintiff joined in a stipulation. Thus, the pleadings were enlarged so as to include the affirmative defense of payment *1318 at the time that plaintiff failed to object to the introduction of evidence pertaining thereto.
The issues involved herein are mainly factual, and there existing a reasonable evidentiary basis for the trial court's resolution of these facts in favor of the defendant, we find no difficulty in affirming the trial court in its dismissal of plaintiff's suit. Having so decided, we need not consider appellant's specifications of error numbered three, five, and six.
Costs of this appeal are to be borne by plaintiff-appellant, Red Barn.
AFFIRMED.