920 So.2d 911 (2006)
Barry BLANCHARD
v.
RENTAL SERVICE CORP., U.S.A.
No. 05-CA-460.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 2006.
Opinion Granting Rehearing February 21, 2006.
*913 Olden C. Toups, Jr., Grant & Barrow, Gretna, LA, for Plaintiff/Appellee.
Philip J. Borne, Christovich & Kearney, LLP, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and JAMES C. GULOTTA, Pro Tempore.
JAMES L. CANNELLA, Judge.
The Defendants, Rental Services, Corp., U.S.A. (Rental) and Liberty Mutual Insurance Company (Liberty Mutual), appeal from a workers' compensation judgment in favor of the Plaintiff, the employee, Barry Blanchard. We affirm, and award attorney's fees.
The Plaintiff was employed by Rental for several years delivering tools, materials and heavy duty equipment to the company's customers. His job entailed driving a truck, loading and off-loading supplies. On Thursday, July 12, 2001, the Plaintiff was assisting another worker move a pump from a three foot high table to the floor when the pump slipped and slid to the ground, injuring his neck. The Plaintiff *914 felt a "popping" in his right neck to shoulder area immediately. He informed the other worker that he felt pain, but continued to work without reporting the incident to the supervisor, thinking it was a pulled muscle. The Plaintiff returned to work on Friday, although he was sore. On Saturday morning, he woke up in severe pain. He stayed in bed over the weekend. On Monday, he went to work, but reported the problem to the dispatcher, who contacted the supervisor, Dennis McMahon (McMahon).
McMahon took the Plaintiff to Westside Clinic, where he was seen by Dr. Alberto Arrillaga, the first of five doctors chosen by the Defendants. Dr. Arrillaga examined the Plaintiff and concluded that he pulled a muscle. The doctor prescribed pain medication initially, then added physical therapy. He recommended light duty work. The Plaintiff returned to work.
The Defendants did not reimburse the Plaintiff until December of 2001 for those drugs, and have not paid for any medications after them. However, the Defendants paid worker's compensation benefits from September 28, 2001 until April 11, 2002.
When the Plaintiff's pain did not subside, Dr. Arrillaga referred the Plaintiff to an orthopedic surgeon, Dr. Matthew Grimm, who ordered a magnetic resonance imaging scan (MRI). After receiving those results, Dr. Grimm referred the Plaintiff to Dr. Frank Culicchia, a neurosurgeon, who diagnosed a herniated disk at the C5-6 level. Dr. Culicchia scheduled surgery for October of 2002. The Defendants, for unknown reasons, canceled the surgery. The surgery was rescheduled and in November of 2002, Dr. Culicchia performed an anterior cervical diskectomy with fusion. The Defendants refused to pay Plaintiffs medical bills. The Plaintiff used his health insurance to pay for the procedure. He has not yet returned to the work force.
The Plaintiff continued to complain of post-operational pain, so Dr. Culicchia referred him to Dr. Culicchia's associate, Dr. Maria Carmen Espiritu, a pain management doctor. Dr. Espiritu's treatments, which included trigger-point injections, did not resolve the pain. In March of 2003, Dr. Culicchia discharged the Plaintiff, instructing him to seek a second opinion. He was referred by the Defendants to Dr. Lucien Miranne.
On April 11, 2002, prior to the opinion by Dr. Miranne, the Defendants terminated the Plaintiff's worker's compensation benefits. On April 24, 2002, Dr. Miranne issued a report recommending further tests to rule out another nerve root compression. When notified subsequently of the recommendation by Dr. Miranne, the Defendants contacted Drs. Culicchia, who informed them that he disagreed on the necessity of the further tests.
On April 25, 2002 the Defendants filed a Disputed Claim for Compensation in which they asserted that the Plaintiff was capable of returning to work, and/or that there had been an intervening accident. The Defendants rejected Dr. Miranne's recommendation and refused to authorize any further tests.
In May of 2003, the Plaintiff returned to Dr. Espiritu for a final visit. He informed the doctor that Dr. Miranne wanted further tests. Dr. Espiritu immediately conferred with Dr. Culicchia. Dr. Espiritu then sent a letter to the Defendants with her opinion that the tests were unnecessary and should not be authorized. The Plaintiff then formally requested authorization to obtain a physician of his choice. Plaintiff was no longer under the care of either doctor at that point. The Defendants *915 have never responded to this request.
In June of 2002, the Plaintiff filed a Disputed Claim for Compensation asking for reinstatement of all benefits and for penalties and attorneys' fees.
The Plaintiff continued to have pain in the cervical area. Consequently, the Plaintiff was referred by counsel to Dr. Kenneth Adatto, an orthopedic surgeon. Dr. Adatto saw the Plaintiff for the first time on February 4, 2003. Based on the available MRIs, Dr. Adatto determined that the Plaintiff has another herniated disk at the C6-7 level, one below the fused site at C5-6. Dr. Adatto has recommended surgery, which the Defendants have refused to authorize. Plaintiff is currently receiving steroid injections by Dr. Adatto.
The case was tried on August 18, 23, and 24, 2004, and concluded on September 27, 2004. The case was taken under advisement. On November 23, 2004, the worker's compensation judge (judge) found in favor of the Plaintiff and awarded him temporary, total disability benefits. The judge further assessed penalties against the Defendants of $2,000 for their arbitrary and capricious refusal to pay indemnity benefits, and $2,000 for failure to pay medical expenses, medication expenses, diagnostic testing fees, and for failing to timely authorized the initial surgery recommended by the Defendant's doctor. She awarded attorney's fees of $8,000 for those violations. The judge further awarded statutory penalties of $250 and attorney's fees of $500 for the Defendants failure to timely provide medical records to the claimant. She filed written reasons for judgment in the record on February 24, 2005.
On appeal, the Defendants contend that the judge erred in failing to find that the Plaintiff committed fraud by misrepresenting his physical condition and ability to work, and in denying that he had a prior neck injury. The Defendants further contend that the judge erred in refusing to allow the introduction of a deposition of the Plaintiff's ex-girlfriend, who had been listed a witness by the Plaintiff in the pretrial list, and who testified falsely regarding the Plaintiff's condition. Third, they assert that the judge erred in the award of penalties and attorney's fees.
The Plaintiff answered the appeal requesting additional attorney's fees for appeal, and court costs in the trial and appellate courts.

STANDARD OF REVIEW
To be entitled to workers' compensation benefits, the plaintiff must prove that there was a work related accident, resulting in a disability that was caused by the accident. Wiley v. Dijon Services, Inc, 02-242, p. 3 (La.App. 5th Cir.10/16/02), 831 So.2d 317, 319, writ denied, 02-2612 (La.12/13/02), 831 So.2d 990. The plaintiff bears the burden of establishing this causal connection by a reasonable preponderance of the evidence. Id.; Quinones v. U.S. Fidelity and Guar. Co., 93-1648, p. 6 (La.1/14/94), 630 So.2d 1303, 1306-07.
The appellate court's review of a workers' compensation case is governed by the manifest error or clearly wrong standard. Wiley, 02-242 at 3, 831 So.2d at 318. In applying the manifest error-or clearly wrong standard, we must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 13 (La.3/4/98), 708 So.2d 375, 380; Hookfin v. Advantage Nursing Services, Inc., 03-340, p. 3 (La.App. 5th Cir.10/15/03), 860 So.2d 57, 59. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact *916 should not be disturbed, even though we may feel that its own evaluations and inferences are as reasonable. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993); Hookfin, 03-340 at 3, 860 So.2d at 59. Thus, if there are two permissible views of the evidence, a factfinder's choice of them can never be manifestly erroneous or clearly wrong. Chaisson, 97-1225 at 14, 708 So.2d at 381; Hookfin, 03-340 at 4, 860 So.2d at 59. Accordingly, if the factfinder's findings are reasonable in light of the record, the appellate court may not reverse or modify the judgment. Chaisson, 97-1225 at 4, 708 So.2d at 381; Hookfin, 03-340 at 4, 860 So.2d at 59.

FRAUD
La.R.S. 23:1208 A provides that "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." La.R.S. 23:1208 E provides that, "Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter."
R.S. 23:1208 requires proof of 1) a false statement or representation, 2) made willfully, 3) for the purpose of obtaining or defeating any benefit or payment. Parker v. ADM Milling Co, 01-649, p. 7 (La.App. 5th Cir.11/27/01), 804 So.2d 120, 125; Scuderi v. Crazy Johnnie Cafe, Inc., 02-243, p. 19 (La.App. 5th Cir.10/16/02), 831 So.2d 1037, 1049. In determining whether the statement was made willfully in an attempt to obtain or defeat benefits, "The relationship between the false statement and the pending claim will be probative...." Parker, 01-649 at 7, 804 So.2d at 125; Scuderi, 02-243 at 19-20, 831 So.2d at 1049. False statements that are inadvertent or inconsequential will not result in forfeiture. Parker, 01-649 at 7, 804 So.2d at 125; Scuderi, 02-243 at 20, 831 So.2d at 1049.
Forfeiture of worker's compensation benefits is a harsh remedy. Marler v. New Orleans Area Council, Boy Scouts of American, 01-1167, p. 7 (La.App. 5th Cir.3/13/02), 815 So.2d 131, 135. Because R.S. 23:1208 is penal in nature, it must be strictly construed, both substantively and in its penalty provisions. Parker, 01-649 at 7, 804 So.2d at 125; Scuderi, 02-243 at 20, 831 So.2d at 1049; Gibbs v. Delasandro Painting and Decorating, 03-1144, p. 11 (La.App. 5th Cir.2/10/04), 868 So.2d 804, 810.
The issue of whether an employee has forfeited her right to workers' compensation benefits is a factual question that should not be disturbed on appeal absent manifest error. Parker, 01-649 at 7, 804 So.2d at 125; Scuderi, 02-243 at 20, 831 So.2d at 1049.
In reviewing this issue, we find that the Defendant failed to plead the fraud defense under La. R.S. 23:1208. Fraud is an affirmative defense under La. C.C.P. Art. 1005 and must be specially pled. That requirement applies to a worker's compensation case. Failure to do so will result in the wavier of the defendant's right to argue the issue. Messina v. Isle of Capri Casino, 04-1061 (La.App. 3rd Cir.12/22/04), 891 So.2d 780, writ denied, 05-0535 (La.4/29/05), 901 So.2d 1071.
In Messina, the employer attempted to raise the issue of the worker's fraud for the first time in the pre-trial brief. The plaintiff objected to inclusion of the fraud evidence at trial. The worker's compensation judge denied the objection. Ultimately the worker's compensation judge found in the favor of the plaintiff, and on appeal the employer raised the fraud argument again. The Third Circuit Court of Appeal *917 declined to address the issue. It held that the allegation of fraud in a worker's compensation case is an affirmative defense under La.C.C.P. art. 1005 and must be specially pled. Because the employer had failed to specially plead the affirmative defense of fraud, the court found that the employer had forfeited its right to argue the issue.
In reaching its conclusion, the Messina court distinguished Richey v. Vanliner Insurance Co., 97-121 (La.App. 3rd Cir.6/4/97), 696 So.2d 190, writ denied, 97-1799 (La.10/13/97, 703 So.2d 620). In Richey, the employer had not pled fraud. However, at trial it became clear to all that the plaintiff had committed fraud to obtain benefits. The defendant then attempted to assert the fraud defense, but the worker's compensation judge disallowed it on the basis that it was procedurally barred. On appeal, the court found that under those facts, the defendant was entitled to raise the defense, because it only became evident during cross examination that the employee was untruthful. Prior to then, the employer had no basis upon which to plead fraud. Furthermore, the court found that the fraud was upon the court as well as the employer, and that, as such, it would not "support claimant's fraud by technical application of rules related to pleadings." Richey, 97-121, p. 4, 696 So.2d at 192-193.
In this case, the Defendants failed to plead the fraud defense. In addition, the Defendants assert that the Plaintiff committed fraud based on surveillance videos ordered by them. No other evidence is alleged to have come to light at trial that was not available to the Defendants prior to the hearing. Unlike Richey, the Defendants were not surprised at trial by testimony that supported a fraud defense. We therefore find that the Defendants have forfeited their right to raise the affirmative defense of fraud under La.R.S. 23:1208.

UNAVAILABLE WITNESS
The Defendants next assert that the workers compensation judge erred in refusing to allow the deposition of the Plaintiff's ex-girlfriend, JoEllen Breaux, into evidence, in lieu of her in-court testimony. The Defendants contend that she had moved out of the state to Tennessee in January of 2004, and they argue that she was an unavailable witness under La. C.C.P. art. 1450 since she lived further than 100 miles from the place of the trial, and because she could not be subpoenaed to testify at trial. The Defendants claim that her testimony is relevant because she made false statements related to the Plaintiff's condition. Since the Plaintiff knowingly allowed her to do so, his benefits should be forfeited.
We have already determined that the Defendants cannot raise the fraud defense. Nevertheless, we note that the Defendants were not precluded from finding the witness to seek her willingness to testify. Instead, they admitted at trial that they made no effort to find the witness. See: La.C.C. art. 804 A. The workers' compensation judge heard the arguments and, in her discretion, excluded the deposition. We find no error in this regard.

PENALTIES AND ATTORNEY'S FEES
La. R.S. 23:1201 F provides for the imposition of penalties and attorneys fees when indemnity or medical benefits due to the claimant are not paid timely. However, this does not apply if the claim is reasonably controverted, or if such nonpayment results from conditions over which the employer had no control. La. R.S. 23:1201 F(2). In order to reasonably controvert a claim, the Defendant must have some valid reason or evidence upon *918 which to base the denial of benefits. Brown v. Texas-La Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890; Barbarin v. TLC Home Health, 02-1054, p. 9 (La.App. 5th Cir.4/29/03), 845 So.2d 1199, 1206. The question is whether the Defendant "engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time which they refused to pay all or part of the benefits allegedly owed." Brown, 98-1063 at 9, 721 So.2d at 890; Barbarin, 02-1054 at 9, 845 So.2d at 1206.
The assessment of penalties and attorney fees by the workers' compensation judge is a factual question which is not to be disturbed on appeal in the absence of manifest error. Barbarin, 02-1054 at 9, 845 So.2d at 1206. Awards of penalties and attorney's fees in workers' compensation cases are penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. See, Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Williams v. Rush Masonry, Inc., 98-2271, p. 8 (La.6/29/99), 737 So.2d 41, 46. The fact that an employer may be subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim. Sharbono, 97-0110 at 11, 696 So.2d at 1389 (penalties and fees are never assessed automatically against the losing party); Williams, 98-2271 at 9, 737 So.2d at 46.
The Defendants argue that the workers' compensation judge erred in awarding penalties and attorney's fees, considering that the Defendants "had a good faith basis for terminating worker's compensation benefits based on video showing that Appellee was capable of working, contrary to the presentations that he was making to his doctors."
The Defendants refer to a "video," and do not distinguish between the types of penalties awarded by the workers' compensation judge.[1] Based on the argument in brief, we conclude that the only issue on appeal is the termination of indemnity benefits.
The Defendants' private investigators took surveillance videos on several occasions.[2] However, the Defendants terminated the Plaintiff's benefits on April 11, 2002. Only the videos dated April 3, 2002 and April 10, 2002 are thus relevant to this issue. The private investigators involved in the surveillance testified about the content of those tapes.
The medical evidence indicates that, since the first surgery, the Plaintiff has complained of unrelieved neck pain, problems with arm and neck movements, problems with prolonged sitting and walking over one mile, and radiating pain into the right arm and elbow. His complaints have continued to date.
After the Plaintiff's surgery by Dr. Culicchia, the Plaintiff continued to complain of pain, despite medication and physical therapy and treatment by Dr. Espiritu. *919 During his treatment with those physicians, the Plaintiff was instructed to increase his activity. He was told to increase his walking, perform moderate lifting, exercise and do yard work. Dr. Culicchia discharged the Plaintiff to return to light duty work in March of 2002, only three months after the neck surgery. At that point, the Plaintiff was told to seek a second opinion. Dr. Espiritu continued until May to treat the Plaintiff, but she too said he could perform light duty work. Neither doctor was aware that the Plaintiff had no job to return to as he had been terminated (for cause) from his employment. The Defendants did not provide the Plaintiff with vocational rehabilitation, indicate in any way that jobs were available in his geographical area, or seek to find a suitable position for the Plaintiff.
The Defendants chose Dr. Lucien Miranne, another neurosurgeon for the second opinion. Before Dr. Miranne rendered his report in late April of 2002, the Defendants terminated his indemnity benefits.
In the video taken on April 3, 2002, the Plaintiff is viewed standing outside of his house talking to his mother, bending at the waist to remove an object from the back of his SUV, placing it on the ground, and using a shovel to dig and plant the garden He was thinner then, and not using a cane.
In the video of April 10, 2002, the Plaintiff is observed putting out the trash using a hand cart, picking up empty plastic trash cans, and waving his arms over his head. It also shows a bald headed individual carrying a glass windshield and replacing it in the Plaintiff's classic 1957 Chevrolet car. However, as the evidence unfolded at trial, it was apparent that the man was not the Plaintiff.
The Plaintiff does not use a cane in either video, a fact deemed important by the Defendants. However, in his testimony, the Plaintiff explained that he started using a cane after these videos were taken, sometime mid-year. Furthermore, he noted that both Drs. Culicchia and Espiritu had instructed him to increase or resume his activities, which he was attempting to do. This was substantiated by the evidence. The Plaintiff further explained that, although he attempted to follow the doctors' instructions regarding activities, his neck pain did not abate.
Neither of the videos portrays the Plaintiff doing anything unreasonable, particularly in light of the medical instructions given to him by the Defendants' own doctors to increase his activities. Furthermore, even though Dr. Culicchia had released the Plaintiff to work over his protestations, Dr. Miranne's opinion was still pending when the benefits were terminated. The Defendants' actions were not warranted under these facts. Thus, we find that the workers' compensation judge did not commit manifest error in her factual finding that the Defendants were arbitrary and capricious in terminating the Plaintiff's benefits, and in awarding the Plaintiff penalties and attorney's fees under La.R.S. 23:1201. The amounts of the penalties and attorney's fees are not manifestly erroneous.

PLAINTIFF'S APPEAL
The Plaintiff answered the appeal requesting attorney's fees and trial and appeal costs. An award of attorney's fees is warranted in worker's compensation cases for work necessitated by the employer's appeal. See: Colonial Nursing Home v. Bradford, 02-588 (La.App. 3rd Cir.12/30/02), 834 So.2d 1262, writ denied, 03-364 (La.4/21/03), 841 So.2d 802. Considering the Plaintiff's attorney had to do additional legal research, prepare a brief and orally argue the case before this Court, we find an additional award of *920 $2,500 to be a reasonable fee. We likewise find that an award of trial and appeal costs is warranted.
Accordingly, the judgment is hereby affirmed. The Plaintiff is awarded $2500 for attorney's fees necessitated by the appeal. The Defendants are to pay trial and appeal costs.
JUDGMENT AFFIRMED AND ATTORNEY'S FEES AWARDED
REHEARING GRANTED.
This rehearing is granted solely to address the issue of the fraud defense. In the opinion we held that the Defendant waived the fraud defense. The Defendant argues that the Plaintiff was placed on notice of the issue in the pre-trial order and by admissions at trial, by enlargement of the pleadings at trial, and points out that the trial judge considered the issue. We find on rehearing that while the Defendant's argument has some merit as to whether it waived the defense, we also find that the facts in this case do not support a finding of fraud by the Plaintiff. Thus, the trial judge did not err in rejecting the Defendant's allegation of fraud, and we affirm our original decision.
NOTES
[1] She also awarded penalties and attorney's fees for failure to pay medical expenses, medication expenses, diagnostic testing fees, for failing to timely authorized the initial surgery recommended by the Defendant's own doctor, and for the Defendants failure to timely provide medical records to the claimant.
[2] April 3, 2002, April 10, 2002, May 8, 2002, May 9, 2002, May 30, 2003, August 21, 2003 and March 7, 2004.