# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 19-887

**ARCHAET MILLIGAN**

**VERSUS**

**HERITAGE MANOR HEALTH & REHABILITATION CENTER**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION
PARISH OF OUACHITA, DISTRICT 1-E, NO. 18-04868
BRENZA IRVING JONES, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Nathan M. Gaudet**
**Perrier & Lacoste, L.L.C.**
**One Canal Place**
**365 Canal Street, Suite 2550**
**New Orleans, Louisiana  70130**
**(504) 212-8820**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Heritage Manor Health and Rehabilitation Center, LLC,**
    **Gallagher Bassett Services, Inc., and**
    **Zurich American Insurance Co.**


**Paul H. Benoist**
**BENOIST LAW OFFICES**
**329 Market Street**
**Natchez, Mississippi  39120**
**(601) 445-4148**
**COUNSEL FOR CLAIMANT/APPELLEE:**
    **Archaet Milligan**

**PERRY, Judge.**

Heritage Manor Health and Rehabilitation Center, LLC, and its insurer, Zurich American Insurance Company (collectively referred to as "the employer"), appeal the judgment of the workers' compensation judge ("WCJ") in favor of Claimant, Archaet Milligan. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Ms. Milligan filed a disputed claim for compensation ("1008") against her employer, Heritage Manor Health and Rehabilitation Center, LLC ("Heritage Manor"), and its insurer, Zurich American Insurance Company ("Zurich"), on July 19, 2018.[1] She alleged she was injured in the course and scope of her employment as a certified nursing assistant ("CNA") with Heritage Manor on September 23, 2016. Ms. Milligan's 1008 described the alleged accident as follows:

> Claimant was dressing a patient. While in the process of dressing the patient, Claimant felt a sharp pain in her right chest area and right arm with pain radiating down her arm. The other CNA, Alexis Mitchell, finished dressing the patient. Claimant thought the pain would go away but after a week, it did not. Claimant reported the injury on 09/29/16.

Ms. Milligan's initial and two supplemental and amended 1008 filings alleged the employer wrongfully denied surgical treatment and repeatedly paid wage indemnity benefits untimely.[2]

---

[1] Claimant's Exhibit Number 23 is a Disputed Claim for Medical Treatment (1009) filed on July 9, 2018. Therein, Ms. Milligan alleged Dr. Jorge E. Isaza's request to perform surgery was denied. The surgery is described as "Anterior Cervical Fusion C5-6, C6-7, C6 Corpectomy Decompression, Anterior Instrumentation C5-6-7, Application of cage and Local Bone Graft."

[2] Ms. Milligan's original 1008 specifically alleged:

Medical treatment requested by Dr. Isaza denied by [the employer] "until doctor addresses major contributing cause", or MCC, a term found nowhere in Louisiana Medical Treatment Guidelines. Dr. Isaza took Claimant off work on June 25, 2018. All TTD due was due on or about July 9, 2018. Demand followed June 29, 2018 to [the employer] for wage indemnity benefits. No benefits to this date. Claimant seeks La.R.S. 23:1201.F and I. penalties, penalty attorney's fee, all costs, and legal interest from dates due. URGENT SURGERY MATTER.

In answers filed August 22, 2018, October 12, 2018, and February 5, 2019, the employer generally denied Ms. Milligan's contentions. Notably, the employer's first and last answers declared, "Defendant asserts any and all rights it may have to declare benefits forfeited pursuant to La.R.S. 23:1208, *et seq*." On October 2, 2018, the employer filed a pre-trial statement wherein it listed one of the issues to be litigated as "[w]hether Claimant has forfeited all rights to benefits pursuant to [La.R.S.] 23:1208" and expounded under "Defendants' Contentions" the following, in pertinent part:

> [The employer] obtained medical records of Riverland Medical Center. The records show on July 29, 2016, *about two months prior to the alleged work-related incident and before she was employed by Heritage* [*Manor*], Claimant complained of right-sided neck pain since the day before (July 28, 2016) and "stated that it probably started when lifting patients at work as a CNA." Her pain was seven out of ten. She filled a Torodol [sic] prescription on the same date.

Following a scheduling conference on October 9, 2018, an order was issued setting trial for January 31, 2019. In addition, the scheduling order established the following deadlines: cessation of discovery forty-five days prior to trial; filing amendments to pleadings thirty days prior to trial; filing pre-trial motions thirty days prior to trial; and filing motions for summary judgment not less than sixty-five days prior to trial. Ultimately, trial was postponed until August 28, 2019.

On August 26, 2019, Ms. Milligan filed a motion in limine seeking an order prohibiting the employer from offering any evidence to prove fraud pursuant to La.R.S. 23:1208.[3] She argued: (1) all pleading deadlines had passed; (2) to allow

---

[3] Louisiana Revised Statues 23:1208 provides, in pertinent part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

the employer's 1208 fraud evidence would violate La.Code Evid. articles 402,[4] 403,[5] and 404;[6] (3) the employer's 1208 fraud defense was never pled with particularity as required under La.Code Civ.P. art. 1005; (4) the employer's answers only "vaguely hypothesize" it may have some rights; (5) there have been no other pleadings which comply with La.Code Civ.P. articles 852,[7] 854,[8] or 856[9] filed by the employer; and (6) jurisprudence declares that listing fraud as an issue in a pre-trial statement is an insufficient assertion of the 1208 fraud defense. *See Messina v. Isle of Capri Casino*, 04-1061 (La.App. 3 Cir. 12/22/04), 891 So.2d 780, *writ denied*, 05-535 (La. 4/29/05), 901 So.2d 1071; and *Blanchard v. Rental Serv. Corp., U.S.A.*, 05-460 (La.App. 5 Cir. 1/17/06), 920 So.2d 911. Thus, Ms. Milligan claimed prejudice by not knowing what proof of her alleged fraud the employer sought to offer at trial.

---

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

[4] Louisiana Code of Evidence Article 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible."

[5] Louisiana Code of Evidence Article 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

[6] Louisiana Code of Evidence Article 404 provides that evidence of a person's character, a particular character trait, or a prior or subsequent act, is inadmissible to prove that a person acted in conformity therewith on a particular occasion. However, La.Code Evid. art. 404(B) sets forth an exception to this general rule when the prior acts are used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident[.]"

[7] Pleadings in civil actions are "petitions, exceptions, written motions, and answers." La.Code Civ.P. art. 852.

[8] Louisiana Code of Civil Procedure Article 854 provides, in pertinent part: "All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs. As far as practicable, the contents of each paragraph shall be limited to a single set of circumstances."

[9] Louisiana Code of Civil Procedure Article 856 provides: "In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally."

3

The employer filed a motion to strike, arguing Ms. Milligan's motion in limine was an untimely-filed pre-trial motion in light of 40 La.Admin.Code I, §6001[10] and the WCJ's scheduling order which established the deadline for filing pre-trial motions as thirty days prior to trial. Additionally, the employer alleged it put Ms. Milligan on notice of its intent to raise 1208 fraud allegations in its answers and pre-trial statement. The employer contended that despite Ms. Milligan knowing of its 1208 fraud allegations "for two years, [she] has not attempted to perform discovery on the issue, nor has [she] addressed it at all." Thus, the employer claimed prejudice from Ms. Milligan's "purposeful failure to timely file this Motion[.]"

The WCJ considered the parties' opposing motions on the morning of trial. The employer reiterated its argument Ms. Milligan's motion in limine was a pre-trial

---

[10] Louisiana Administrative Code 40, Part I, Section 6001 provides, in part:

A. Within 60 days following receipt of the answer a scheduling conference for the purpose of setting pretrial deadlines shall be held by telephone.

B. Issues to be considered and determined at the scheduling conference may include:

    1. the necessity or desirability of amendments to pleadings;

    2. discovery anticipated by the parties;

    3. deadlines for amendments to pleadings; completion of discovery and scheduling of pretrial motions;

    4. scheduling of the pretrial conference and the scheduling of a pretrial mediation conference;

    5. scheduling of the trial;

    6. the need for and scheduling of a pretrial conference;

    7. such other matters as may aid in the disposition of the action.

C. At the conclusion of the scheduling conference and no longer than 14 days following the conference, a scheduling order, developed by the director, shall be issued by the judge setting forth the actions taken and deadlines set at the conference. Such order shall control the subsequent course of the claim, unless modified to prevent manifest injustice upon motion of a party or by order of the court.

4

motion which was filed in contravention of the WCJ's scheduling order requiring pre-trial motions be filed thirty days prior to trial. It argued:

> if a motion was timely brought, you know, even if Your Honor agreed with the substance of the motion in limine it could have been cured by an amendment to the pleadings. So this late in the game when these allegations have been known about for quite some time is [prejudicial] to Defendants and doesn't comply with the rules of this Court and scheduling order.

Ms. Milligan contended her motion sought to strike any allegations concerning fraud on the grounds that the employer did not formally plead fraud. She alleged fraud was neither pled affirmatively in the employer's answers nor raised in a separate pleading. According to counsel for Ms. Milligan, "My client was deposed. There was [sic] no filings made after her deposition in January of this year to include a fraud claim." Ms. Milligan further contended the employer's pretrial statement is not a pleading under the Code of Civil Procedure. She argued the employer's failure to plead fraud with specificity in any pleading was equally prejudicial toward her.

The WCJ ruled fraud was not properly pled; therefore, it prohibited any evidence of Ms. Milligan's alleged fraud. The employer requested additional time and leave of court to amend its answer; however, its request was denied. Consequently, Ms. Milligan's motion in limine was granted, the employer's motion to strike was denied, and trial on the merits of Ms. Milligan's workers' compensation claims commenced.

Following trial, the WCJ rendered judgment in favor of Ms. Milligan, awarding: a $2,000 penalty for late wage indemnity, pursuant to La.R.S. 23:1201.F; $2,000 penalty for wrongful denial of Dr. Isaza's surgical request, pursuant to La.R.S. 23:1201(F); $8,000 penalty for arbitrary and capricious late payments of wage indemnity, pursuant to La.R.S. 23:1201(I); and $7,500 in attorney fees. Judgment was signed September 10, 2019.

5

The employer filed a suspensive appeal. It is now before this court contending the trial court erred in the following respects: (1) in granting Ms. Milligan's motion in limine and excluding all testimony or references to the employer's 1208 defense; and (2) in ruling in favor of Ms. Milligan, awarding penalties and attorney fees against the employer despite Ms. Milligan's alleged violation of La.R.S. 23:1208.

## LAW AND DISCUSSION

A motion in limine is an evidentiary matter and great discretion is given to a trial court's ruling. *Young v. Supplier Servs., LLC*, 13-670 (La.App. 3 Cir. 4/2/14), 141 So.3d 288. Consequently, we must decide if the WCJ abused its discretion by granting the motion in limine Ms. Milligan filed on the eve of trial.

The employer argues the WCJ committed legal error by granting a motion which violated its own scheduling order. The employer asserts the WCJ's erroneous decision resulted from application of incorrect legal principles and caused prejudice because it was not allowed to present a 1208 fraud defense and Ms. Milligan was allowed to recover. It urges that either Ms. Milligan's motion in limine should have been denied, or it should have been allowed to amend its pleadings and answers. The employer implores this court to find the WCJ legally erred, conduct a de novo review, reverse the WCJ's decisions, and find Ms. Milligan's workers' compensation benefits are forfeited due to her violation of La.R.S. 23:1208.

Conversely, Ms. Milligan argues the scheduling order does not speak to any deadline for evidentiary or trial motions; instead, she alleges the scheduling order contemplates only summary judgment and dispositive motions, whereas a motion in limine is a motion used to preclude prejudicial or objectional evidence before it is presented. Further, Ms. Milligan contends a 1208 fraud claim must be brought as an ordinary proceeding, which requires a 1008 and service, because it seeks monetary relief and sanctions against a claimant, including quasi-criminal or

6

criminal sanctions.  She alleges the employer missed the deadline plainly set forth in the scheduling order requiring amendments to pleadings to be filed thirty days prior to trial.  We agree.

A reading of La.Code Civ.P. art. 1005 makes it clear:  "The answer shall set forth affirmatively . . . fraud[.]"  *See also TD Auto Finance, LLC v. Myles*, 19-498 (La.App. 3 Cir. 1/15/20), 289 So.3d 108.  Affirmative defenses raise issues outside those presented in a plaintiff's petition for damages, thus, it is necessary that it is pled in order to afford the plaintiff an opportunity to adjust its case in light of the new issue raised.  *Rider v. Fontenot*, 463 So.2d 951 (La.App. 3 Cir. 1985).  "In the absence of inclusion of an affirmative defense in the answer, evidence can be adduced thereon only in the absence of an objection thereto."  *Red Barn Chems., Inc. v. Lassalle*, 350 So.2d 1315, 1317 (La.App. 3 Cir. 1977).  "If the affirmative defense is allowed despite the defense not being raised in answer, the result is a surprise 'trial by ambush' that unfairly aids the defendant, who knew about the defense even though plaintiff was kept in ignorance of the defense."  *Rider*, 463 So.2d at 956.  *See also Patterson v. State*, 95-1668 (La.App. 3 Cir. 12/11/96), 685 So.2d 473, *writs denied*, 97-27, 97-108 (La. 2/21/97), 688 So.2d 513.

In *Messina*, 891 So.2d 780, this court overruled the WCJ's allowance of defendant's fraud claim which was not affirmatively pled; instead, defendant's fraud claim was listed on its pre-trial statement filed just days before trial.  This court held the defendant forfeited its right to plead fraud, finding "La.Code Civ.P. art. 1005 requires that a fraud claim pursuant to La.R.S. 23:1208 must be specifically pled in the answer."  *Id*. at 785.  This court additionally remarked:

> The activities which the employer claims are proof of fraud had long been known to the employer, yet the employer failed to plead fraud as an affirmative defense and made no mention that fraud would be pursued as an affirmative defense until the allegation was included in

7

the employer's pre-trial statement which was untimely filed only one week before trial.

*Id*.

In the instant case, the employer failed to specifically plead the affirmative defense of fraud, and Ms. Milligan rightly raised an objection to evidence being adduced thereon through an evidentiary motion in limine. *See Red Barn Chems. Inc.*, 350 So.2d 1315. "Failure to [specifically plead fraud] will result in the waiver of the defendant's right to argue the issue." *Blanchard*, 920 So.2d at 916 (citing *Messina*, 891 So.2d 780). In light of the foregoing, we find the WCJ did not abuse its discretion in granting Ms. Milligan's motion in limine, barring the employer's fraud claim pursuant to La.R.S. 23:1208.

In its second assignment of error, the employer argues the WCJ erred in ruling in favor of Ms. Milligan, awarding penalties and attorney fees against it, despite Ms. Milligan's alleged violation of La.R.S. 23:1208. The employer points out that the WCJ noted, in open court, Ms. Milligan committed fraud.

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard. *Gibson v. Resin Sys., Inc.*, 15-299 (La.App. 3 Cir. 10/7/15), 175 So.3d 1141. The WCJ's factual conclusions will not be disturbed if they are reasonable and supported by the record. *Id*. This court has also noted in a workers' compensation case that credibility calls are the function of the trial court. *See McCall v. Wal-Mart Stores, Inc.*, 02-1343 (La.App. 3 Cir. 3/5/03), 846 So.2d 832, *writs denied*, 03-1329, 03-1343 (La. 9/19/03), 853 So.2d 639, 853 So.2d 641.

The record reveals the parties stipulated Ms. Milligan was at work at Heritage Manor on September 23, 2016; however, the employer disputed Ms. Milligan suffered a work accident. Among several others, the parties also stipulated: the employment and medical records were authentic; Ms. Milligan's workers'

8

compensation claim was originally accepted by the employer as a compensable claim in October 2016; and denial of Ms. Milligan's medical treatment led to a 1008 being filed in August 2017, docket number 17-5146, which was resolved for agreed-upon penalties and attorney fees.

Ms. Milligan testified she was in the process of assisting a patient to sit up on the side of a bed to dress when she felt a sharp pain in her right chest and down her right arm. She recalled another CNA, Alexis Mitchell, asked her what was wrong and finished dressing the patient because Ms. Milligan could not.

Since her injury, Ms. Milligan has received treatment from Drs. John H. Fairbanks,[11] Gerald Leglue,[12] and Jorge E. Isaza.[13] She began seeing Dr. Isaza in May 2018. Dr. Isaza opined Ms. Milligan was unable to work, i.e., temporarily and totally disabled, in June 2018; he performed surgery on her in August 2018[14]; and he associated the surgery to the work-related injury. Ms. Milligan testified that, as of the date to trial she was still unable to work; however, Dr. Isaza had scheduled her to undergo a functional capacity evaluation the following week.

When questioned about her employment history, Ms. Milligan testified that, in addition to working at Heritage Manor three different times, she has worked as a CNA at three other nursing facilities—Jena Rehab, LaSalle Nursing Home, and Camelot. According to Ms. Milligan, her employment with Heritage Manor ended in October 2017, after filing the prior-1008 in August 2017; and she had difficulty

---

[11] The parties stipulated Dr. Fairbanks is Ms. Milligan's choice of general orthopedist.

[12] It was stipulated Dr. Leglue is Ms. Milligan's choice of physical medicine physician.

[13] It was stipulated Dr. Isaza is Ms. Milligan's choice of orthopedic spine surgeon specialist physician.

[14] Claimant's Exhibit Number 21 is an LWC Form 1010 Request of Authorization/Carrier or Self-Insured Employer Response, wherein Dr. Isaza's request to perform surgery on Ms. Milligan was approved on July 19, 2018.

getting medical treatment and received no disability benefits from fall 2017 through July 2018.

On cross-examination, Ms. Milligan admitted she experienced pulled muscles and strains in her neck and back before she suffered the injury at issue in this matter. She acknowledged seeking medical treatment in 2009 for a pulled neck muscle, in 2012 for back pain, and on February 17, 2014 for lower back pain. Ms. Milligan initially denied that her lower back pain in 2014 was from an on-the-job injury, but she ultimately conceded her "back was hurting from moving and lifting on patients." She was also questioned about her deposition which occurred on January 23, 2019. Ms. Milligan conceded she testified at her deposition she never hurt her neck or lower back while moving patients.[15]

When Ms. Milligan was questioned about a Health History Questionnaire she completed on June 24, 2015, while employed at LaSalle Nursing Home, her counsel interposed an objection on relevance. The objection was overruled because the employer disputed whether an on-the-job accident occurred, thus, the WCJ found the evidence was relevant to Ms. Milligan's credibility. Ms. Milligan acknowledged she wrote "No" in response to the queries of whether she ever had "back trouble or injury" and "neck trouble or injury."

Next, Ms. Milligan was questioned about a Pre-Placement Health Questionnaire she completed on August 17, 2016.[16] She acknowledged again answering "No" to indicate she never had "Back Pain" or "Neck Pain." Ms. Milligan

---

[15] Though discussed at trial, Ms. Milligan's deposition was not introduced into evidence.

[16] The Pre-Placement Health Questionnaire, introduced into evidence as Defendants' Exhibit Number Seven, contains the following statement above Ms. Milligan's signature: "I certify that all information I have provided on this Pre-Placement Health Questionnaire is true and correct. I understand that any false or misleading information or omission may disqualify me from employment and may result in revocation of any offer of employment and/or discharge from employment."

conceded her answers on the aforementioned health questionnaires were inaccurate. She also acknowledged she sought medical treatment for neck stiffness and back pain on February 17, 2016, and for neck pain on July 29, 2016, which she reported was caused by lifting patients. Though not reflected in the medical records of Riverland Medical Center dated September 29, 2016, Ms. Milligan insisted she reported that her right shoulder and chest pain were caused by lifting a patient at work three days earlier.

Subsequent to her employment with Heritage Manor, Ms. Milligan worked for Alternative Concepts Care, a sitting service. She acknowledged that on March 26, 2018, she completed a Post-Hire Medical History Questionnaire wherein she denied having "Shooting Pains." According to Ms. Milligan, she understood the question as asking if she was having shooting pains at that time, which she was not. She admitted also checking "NO" to indicate she never had a sore neck, neck pain, neck ache, sore back, back pain, back ache, neck stiffness, neck injury, or back injury. Also, Ms. Milligan admitted she was in a motor vehicle accident in February 2018 and injured her back.

On re-direct examination, Ms. Milligan explained she never experienced tingling and numbness in her hands until her September 23, 2016 injury. She did not have a regular doctor; instead, she consistently went to the emergency room or a low fee clinic if she had an ache or pain. Ms. Milligan testified she experienced strains and pulled muscles working as a CNA, but her pain and discomfort would eventually go away in a couple of days. She also testified jobs for CNAs were not plentiful where she lived.

After counsels' examinations, the WCJ questioned Ms. Milligan. When asked for clarification about her neck pain, Ms. Milligan explained that when her neck and back bothered her, she went to the emergency room where she received medication

11

for pain. The WCJ asked, "And what was different about this time?" Ms. Milligan insisted, "It didn't go away. This time I -- well actually I had never experienced that type of pain. That pain hit me in the right chest, and it went down my arm." The following testimony was elicited when the WCJ asked Ms. Milligan why she "put on these prior work questionnaires why you hadn't had any prior problems with your neck?"

> THE WITNESS: For one, I was unemployed, and I know if I had, you know, checked "yes" on those questionnaires, they probably -- I probably wouldn't have been hired.
>
> THE COURT: Okay.
>
> THE WITNESS: You know, I needed a job. I didn't have no income coming in. You know, they didn't -- they denied my Workman's Comp. I wasn't -- I didn't have any income. I have five kids I have to take care of, so I just, you know, checked "no", you know, so I could get the job.
>
> . . . .
>
> THE COURT: So you do realize that the only reason that you are not -- the only reason that you are not being denied benefits simply based on fraud is because the defendants didn't plead it. You do understand that when you lied on those documents that you committed fraud? You do understand that; right?
>
> THE WITNESS: Yeah. I understand it now.
>
> THE COURT: And if you commit fraud, that means you're not even able to get any benefits that you might be entitled to.
>
> THE WITNESS: Yes, ma'am.
>
> THE COURT: Because usually it's a little statement down there that says that if you don't answer these matters truthfully then your benefits can be denied. Do you remember reading that statement on those forms?
>
> THE WITNESS: No, ma'am.
>
> THE COURT: Okay. All right. You can step down.

Next, the WCJ requested the basis for the denial of Ms. Milligan's surgery. Noting it was before his involvement in this case, counsel for the employer

12

explained, "the powers that be were not satisfied that causation was established[.]" The employer called no witnesses and submitted that its defense was wholly based on fraud. When the WCJ stated it wanted "to look at that causation issue" and "need[ed] to review Dr. Isaza's report[,]" counsel for the employer expressed, "Well, [Dr. Isaza] is assuming that the accident occurred the way [Ms.] Milligan told him it occurred. We're saying that it did not occur that way, if at all." When the WCJ asked the basis for its contention Ms. Milligan's accident did not occur the way she claimed, counsel for the employer elaborated, "The basis of our contention is there's no proof of it, and there's no proof before the Court, and her lack of credibility."

After a brief recess to review trial exhibits, the WCJ issued oral reasons, stating, in pertinent part (emphasis added):

> After review of the medical evidence, the Court is persuaded that the claimant was involved in an accident within the course and scope of her employment. I say that because there was medical evidence with objective findings and evidence from testing that revealed a condition that certainly could have been related to the accident as she described. Furthermore, I note that even though she had some prior medical problems in that region, I didn't find anything that showed a disability as a result of that, particularly to the extent of disability that she is currently experiencing.

> It is unfortunate that Ms. Milligan felt like she needed to be untruthful on questionnaires prior to this time just to be able to have employment and to support her kids. But she has admitted in court today doing so, and she has indicated why she did it. It was because she has to support five children, so I'm certainly not applauding her for being untruthful, but **I'm saying that to say that I don't find that it's enough to find that she has committed fraud in this particular case**.

> I think the accident happened the way that she described it, and the reason I say that is not necessarily based on her testimony but based on the description of the symptoms and the findings of the physician. So I find the causation to be present: accident within course and scope of employment.

Reviewing all the evidence presented at trial, we find there was sufficient evidence for the WCJ to conclude Ms. Milligan suffered a work accident. The WCJ clearly found Ms. Milligan's testimony credible that she was injured at work on

September 23, 2016, though the WCJ recognized that Ms. Milligan's answers on health questionnaires were not as trustworthy. Given that credibility determinations are a function of the trier of fact, we find no manifest error in the WCJ's decision to give credence to Ms. Milligan's testimony and, as a result, in rendering judgment in favor of Ms. Milligan, awarding workers' compensation benefits, penalties, and attorney fees.

*Attorney Fees for Work Done on Appeal*

Finally, in brief, Ms. Milligan's counsel requests an additional award of attorney fees for efforts performed in relation to this appeal. However, counsel did not appeal or answer the appeal requesting attorney fees for work on appeal. Consequently, this relief may not be granted. *See* La.Code Civ.P. art. 2133; *Broussard v. Asco Venture Holdings*, 17-90, 17-91 (La.App. 3 Cir. 10/4/17), 229 So.3d 80.

## DECREE

We affirm the judgment of the Office of Workers' Compensation in favor of Archaet Milligan. Costs of this appeal are assessed to Heritage Manor Health and Rehabilitation Center, LLC, and Zurich American Insurance Company.

**AFFIRMED.**