THIBODEAUX, Chief Judge.
| Appellant, W.T.A.,[1] asserts that the trial court erred by granting Marcie Yeager’s exception of no cause of action on the claim of intentional infliction of emotional distress and by failing to address his other various claims. Marcie Yeager is a social worker. W.T.A. also asserts the trial court erred by holding his defamation claim against Yeager prescribed. W.T.A. finally argues that because the trial court erred as noted above, it also erred by holding his motion to compel discovery moot. Because we find that W.T.A.’s original petition stated a claim for intentional infliction of emotional distress, we reverse that portion of the judgment which dismissed this claim. We also reverse the trial court’s denial of W.T.A.’s motion to compel discovery, and we order Yeager to produce her records and to submit to all other appropriate discovery. Finally, for the following reasons, we affirm the rest of the judgment.
I.

ISSUES

We shall consider whether the trial court erred by dismissing:
(1) W.T.A.’s claim of intentional infliction of emotional distress for failure to state a claim where W.T.A. alleged that Yeager coached his son to make false accusations of sexual abuse against him; and,
(2) W.T.A.’s defamation claim on the grounds of prescription where W.T.A. filed his petition in 2001 but alleged 1994 as the only year surrounding his claims of defamation.
J¿I.

FACTS AND PROCEDURAL HISTORY

When A.J.A. was approximately four years old, his father, W.T.A., and his mother, S.J.D., were divorced. A lengthy and bitter battle over A.J.A.’s custody ensued. W.T.A. and S.J.D. accused each other of sexually molesting A.J.A. Thus, A.J.A. has undergone several examinations and counseling sessions with various mental health experts. Most of these experts were court-appointed. A.J.A.’s mother also hired Yeager as her expert. Yeager was the only expert who concluded that W.T.A. molested A. J.A.
W.T.A. filed this suit in 2001. In 1997, W.T.A. also filed a suit on his own behalf and on behalf of A.J.A. against Yeager and S.J.D. alleging the same conduct on their *615 part as he has alleged in this suit. Eventually, the trial court dismissed the 1997 suit for failure to state a claim. W.T.A. appealed this judgment, and this court reversed, stating that W.T.A. alleged enough facts to state, at the very least, a defamation claim. W.T.A. v. M.Y., 10-434 (La. App. 3 Cir. 11/3/10), 2011 WL 383978.
In 2000, after an exhaustive investigation, the trial court, in a proceeding separate from this matter, found that A.J.A. was coached to accuse his father, W.T.A., of sexually molesting him. Because the court found that Yeager coached A.J.A., the court prohibited anyone acting on behalf of A.J.A. from bringing A.J.A. to any counseling sessions with Yeager or any other mental health professional the court did not appoint.
In this suit, W.T.A. presented detailed allegations as to how Yeager coached A.J.A. to make false allegations against him and how both W.T.A. and A.J.A. suffered from this. W.T.A. alleged in great detail how Yeager committed | ^malpractice. W.T.A. also included one paragraph in which he summarily alleged that Yeager defamed W.T.A. and A.J.A. by making false statements and that both were damaged by this. Finally, W.T.A. alleged that Yeager invaded W.T.A.’s and A.J.A.’s privacy by violating the court’s seal.
In 2009, after A.J.A. reached majority, Yeager filed an exception of no right of action and/or exception of lack of procedural capacity. The trial court appointed a curator for A.J.A. and gave A.J.A. an opportunity to pursue his claims against Yeager on his own behalf. A.J.A. refused in writing to maintain the suit.
In February of 2010, the trial court sustained Yeager’s exception of no cause of action and dismissed W.T.A.’s claims of negligent or intentional infliction of emotional distress, malpractice, loss of father/son relationship, loss of consortium, and loss of love and affection. The trial court allowed W.T.A. to amend the petition to state a cause of action for defamation. W.T.A. filed a motion for a new trial and to compel deposition of Yeager and production of her records.
W.T.A. amended his petition and made detailed allegations of defamation. Nevertheless, the only date of publication to the third parties he alleged was 1994 — the year in which Times of Acadiana published an article about the matter. Yeager filed an exception of prescription which the trial court granted. Without court’s leave, past the time the trial court allowed for the amendment, and five days before the hearing, W.T.A. attempted a second amendment of his petition to allege 1996 as the year of the publication in Times of Acadia-na. The trial court disallowed the second amendment as untimely.
In light of its decision to sustain the exception of prescription, the trial court denied W.T.A.’s motion to compel deposition of Yeager and production of her records as moot. Finally, the trial court denied W.T.A.’s motion for a new trial Rbecause W.T.A. failed to raise any grounds or arguments not previously presented to the court.
On appeal,[2] W.T.A. argues that because he filed his first suit in 1997, it *616 interrupted prescription. He further argues that his first amended petition contained a clerical error, i.e., that the publication in Times of Acadiana was not in 1994 but in 1996, and, therefore, his 1997 suit was within the prescriptive period. W.T.A. also maintains that Yeager continued to make false allegations to third parties. Thus, under the continuing tort theory, W.T.A. suggests that the trial court erred by concluding that the action was prescribed.
W.T.A. also assigns errors to the following trial court’s actions: . (1) the holding that his original petition did not state a claim for infliction of emotional distress; (2) the failure to address his claims of invasion of privacy, malicious litigation and prosecution; and, (3) the failure to allow an amendment to allege malicious litigation, malicious prosecution, invasion of privacy, and civil conspiracy to obstruct justice.
III.

STANDARD OF REVIEW

Appellate courts review a grant of the peremptory exception of no cause of action de novo. Hebert v. Shelton, 08-1275 (La.App. 3 Cir. 6/3/09), 11 So.3d 1197.
The manifest error standard of review applies to an appellate court’s consideration of prescription. Strahan v. Sabine Ret. & Rehab. Ctr., Inc., 07-1607 (La.App. 3 Cir. 4/30/08), 981 So.2d 287. Nevertheless, we must bear in mind that an appellate court must strictly construe the statutes against prescription and in favor of the extinguished claim. Id.
After an answer is filed, the trial court has considerable discretion as to whether to refuse or allow amendments to the pleading. Stockstill v. C.F. Indus., Inc., 94-2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, writ denied, 96-149 (La.3/15/96), 669 So.2d 428. The appellate courts will not disturb the trial court’s decision on appeal absent an abuse of that discretion and a possibility of resulting injustice. Id.
IV.

LAW AND DISCUSSION

(1) Exception of No Cause of Action

The exception of no cause of action is designed to test the sufficiency of the plaintiffs petition. Hebert, 11 So.3d 1197 (quoting Kinchen v. Livingston Parish Council, 07-478, p. 2 (La.10/16/07), 967 So.2d 1137, 1138). The issue is whether the law affords a remedy to the plaintiff based on the facts the pleading contains. Id. No evidence may be introduced to decide this issue, but the well-pleaded facts in the petition must be accepted as true. Id. The court should not dismiss an action for failure to state a claim “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief.” Id. at 1202 (emphasis added).
The essential elements of a claim for an intentional infliction of emotional distress are: (1) intent to cause (2) severe emotional distress by (3) extreme and outrageous conduct. White v. Monsanto Co., 585 So.2d 1205 (La.1991). “The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly | ^intolerable in a civilized community.” Id. at 1209. Merely tortious or illegal conduct does not rise to the level of extreme and outrageous. Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017. Thus, “[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.” White, 585 So.2d at 1209. “The distress *617 suffered must be such that no reasonable person could be expected to endure it.” Id. at 1210.
In the petition, W.T.A. essentially alleges that Yeager, along with S.J.D., coached A. J.A. to make false accusations of sexual abuse against him. Accepting, as we must, these allegations as true, we conclude that the law affords a remedy to W.T.A. Certainly, coaching a child to make a false allegation of sexual abuse against his father is an intentional act to inflict emotional distress upon the father. It is an act that goes beyond all possible bounds of decency, and our civilized community must regard it as atrocious and utterly intolerable. Of course, no reasonable person could be expected to endure the distress of a person falsely accused of sexual abuse of her or his own child. Therefore, W.T.A. alleged enough facts to state a cause of action for intentional infliction of emotional distress.

(2) Exception of Prescription

The party that asserts the exception of prescription bears the burden of proof. Hogg v. Chevron USA, Inc., 09-2632, 09-2635 (La.7/6/10), 45 So.3d 991. Nevertheless, when the face of the petition reveals that the plaintiffs claim is prescribed, the burden shift back onto the plaintiff to show why the claim is not prescribed. Id. The prescriptive period applicable to the defamation claims is one year. La.Civ.Code art. 3536; Dupre v. Marquis, 467 So.2d 65 (La.App. 3 Cir.), writ denied, 472 So.2d 38 (La.1985).
17As the trial court correctly pointed out, the only date of publication to the third parties W.T.A. alleged in his amended petition was 1994, the year in which an article about the matter was published in Times of Acadiana. Thus, the defamation claim is prescribed on the face of the petition. The burden shifted to W.T.A. to show that his claim was not prescribed. He has failed to timely sustain that burden.
We find W.T.A.’s argument regarding continuous • tort theory without merit. Contrary to W.T.A.’s assertions, each publication of a defamatory statement to third persons is a new tort and constitutes a separate cause of action. Wiggins v. Creary, 475 So.2d 780 (La.App. 1 Cir.), writ denied, 478 So.2d 910 (La.1985) (citing Neyrey v. Lebrun, 309 So.2d 722 (La. App. 4 Cir.1975)). W.T.A. alleged in his amended petition that Yeager “continued to make them [defamatory statements] after [their] invalidation” by the numerous investigations. Presumably, these statements were made in 1994, as W.T.A. alleged no other year in the petition or in the amended petition. Again, it was W.T.A.’s burden to show that his claim was not prescribed once it appeared on the face of the petition that it was. Therefore, the trial court committed no manifest error by holding W.T.A.’s claims of defamation prescribed.

3) Residual Issues

In his brief to this court, W.T.A. asserts that the trial court erred by not permitting him to amend his petition to allege malicious litigation, malicious prosecution, invasion of privacy, and civil conspiracy to obstruct justice. W.T.A. further alleges that his original petition stated a cause of action for invasion of privacy because he alleged that Yeager violated the court’s seal.
We find no error in the trial court’s refusal to allow W.T.A.’s second amended petition. W.T.A. attempted to file the amending petition without leave of | scourt five days before the hearing in 2010. Therefore, we do not find that the trial court abused its discretion by disallowing *618 the second amending petition to be filed. Moreover, W.T.A. had some nine years from the time he filed the petition to state all causes of actions he thought he had against Yeager. Thus, we find no error in the trial court’s refusal to allow an amendment as to any causes of action except defamation.
Finally, we find no error in the trial court’s conclusion that W.T.A. did not state a cause of action for invasion of privacy. There are four ways in which one’s privacy may be invaded,[3] and the summary allegation that Yeager invaded W.T.A.’s privacy by violating the court’s seal is not enough to establish this cause of action. Our conclusion that the trial court did not err by disallowing W.T.A. to amend his petition forecloses the consideration of whether the trial court should have allowed W.T.A. to amend the petition to state a claim for invasion of privacy and other torts.
V.

CONCLUSION

Judgment sustaining Marcie Yeager’s exception of no cause of action is affirmed with respect to all W.T.A.’s claims against her except intentional infliction of emotional distress. Judgment sustaining Marcie Yeager’s exception of prescription on W.T.A.’s defamation claim is affirmed. Finally, we reverse the trial court’s denial of the motion to compel discovery and to produce documents. We order Marcie Yeager to produce the documents and to submit to other appropriate discovery. Costs of this appeal are assessed against Marcie Yeager.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. Initials of the persons are used because this case involves allegations of a minor's abuse during his minority.

. We note that W.T.A. appealed the judgment that denied his motion for a new trial, not the judgment that dismissed his claims. Nevertheless, our jurisprudence indicates that where an appellant intended to appeal the judgment on the merits, the appeal should be maintained even if the motion for appeal refers by date to the judgment denying the motion for a new trial. Cole v. Belknap, Inc., 495 So.2d 434 (La.App. 3 Cir.1986). From W.T.A.’s brief, we conclude that W.T.A. intended to appeal the judgment on the merits.

. An invasion of privacy may occur in one of four ways: (1) one appropriates name or likeness of another for ones own benefit; (2) one unreasonably intrudes upon physical solitude or seclusion of another; (3) one gives publicity which unreasonably places another in a false light before the public; and, (4) one unreasonably discloses embarrassing private facts about another to the public. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386 (La.1979).